CENTRAL RAILROAD vs. COMBS et al.

[This case was argued at the last term, but was ordered re-argued at the present term.

1. A railroad company which sells and issues tickets to passengers over its own lines of road and lines of road of other companies (known as through tickets), is liable for the sure and safe transportation of such passengers to the point of destination, notwithstanding there may be indorsed or printed on the tickets so sold and issued a notice that the company issuing and selling such tickets shall not be liable, except as to its own lines of road.

(a.) The road issuing a check for the baggage of a passenger with a through ticket, has been held liable for its safe and sure carriage and transportation, on the ground that it was a part of its undertaking; and the same principle will apply to the passenger himself.

2. Where the agent of a railroad in Atlanta, Georgia, sold to a passenger a ticket to Galveston, Texas, (to which point it was guaranteed he could go,) by way of his own road and connecting roads to New Orleans, and thence by the Morgan line of steamers to Galveston, and upon the arrival of the passenger in New Orleans he found that the steamers on the Morgan line had been taken off; if there were other routes to his destination open to him, the measure of damages which he could recover against the road issuing the ticket, would be what it would have cost him to have reached his destination by other means and routes than the Morgan line, including reasonable pay for delays; and it might include, also, such special damages as the party may have sustained by reason of such delay.

(a.) If it should appear that no quarantine existed when the ticket was sold, and that subsequently to the purchase, the Morgan line of steamers was withdrawn, in consequence of the prevalence of yellow fever in New Orleans, then the purchaser would not be entitled to recover anything.

(b.) If the steamers had been withdrawn when the ticket was purchased, and the purchaser proceeded to New Orleans, and there was no other convenient and expeditious way, then the measure of damages would be the expenses of the purchaser from Atlanta to New Orleans and back, expenses while there, necessary expenses on the road, and the loss of time in making the passage there and back.

September 1, 1883.

Railroads. Contracts. Damages. Common Carriers. Before Judge SIMMONS. Bibb Superior Court. October Term, 1881.

Reported in the decision.

LYON & GRESHAM, for plaintiff in error.

BACON & RUTHERFORD, by brief, for defendants.

BLANDFORD, Justice.

The defendants in error brought their separate actions in the superior court of Bibb county against the plaintiff in error, in which each alleged that he made a contract with the defendant (the plaintiff in error), that for and in consideration of the sum of thirty-five 55-100 dollars, it would transport the plaintiff from the city of Macon, Georgia, to the city of Galveston, Texas; that he paid said amount to defendant, and that defendant issued and delivered to plaintiff a ticket, with certain coupons attached; that plaintiff travelled and was transported on said ticket as far as the city of New Orleans; that part of the ticket so purchased was over the Morgan line from New Orleans to Galveston; that he left the city of Macon on the 20th of August, 1879, and followed the directions given him by defendant, reaching New Orleans on the 21st of August, 1879, and there the defendant failed and refused to carry him farther on his journey, and the Morgan line failed and refused to carry plaintiff from New Orleans to Galveston. And it was further averred that there was no steamer running on the Morgan line from New Orleans, and had not been for a long time before the issuing of said ticket and the making of the contract, and that fact defendant knew before it sold the ticket. These are all the allegations in the declaration material to be considered by this court.

The defendant in the court below and plaintiff in error in this court filed a plea of the general issue.

The plaintiff, Combs, was sworn as a witness in behalf of plaintiffs, and he testified that he wanted to go to Texas for the purpose of buying ponies or horses, in the summer

or winter of 1879, and that he and Richards went to the Central Railroad depot in Macon, and asked the ticket agent as to which was the best way to get to Galveston, and whether they could get tickets to go through on. "He told us he could sell us tickets by way of New Orleans to Galveston, and did sell one to witness and Richards for thirty-five dollars each." Witness identified two tickets shown him, and said that "these are parts of the two tickets sold to us by the agent of the Central Railroad," and were the parts they were not able to use. They started to Galveston on the tickets which they bought, and went as far as New Orleans; and when they arrived there and presented the tickets, the agent of the Morgan line of steamers informed them the steamers were not running. "When we found we could not go on to Galveston, we stayed in New Orleans two days and nights, and then returned to Macon. We paid two dollars a day for board each day we stayed in New Orleans, and we paid twenty-four dollars each for tickets back to Macon," sixteen dollars each for expenses on the road there and back; their time was worth each ten dollars per day; that they were gone six days. Upon cross-examination, stated that ticket agent did not say anything to him about not being able to go to New Orleans by Memphis, but heard some conversation between him and Mr. Richards about going by Memphis, but do not know what it was. Did not hear Mr. Hoge, the agent, say he could not sell us tickets by way of Memphis, on account of yellow fever being there, and the tickets had been taken off of sale; nor did I hear him say he did not know whether we could get through New Orleans or not, as he had not been officially notified to take the tickets off sale. Does not remember what month this occurred in, but thinks it was in the winter time. On looking at the date of the ticket, said it was in August, but afterwards said he thought it was in the winter time. His meals on the way to New Orleans cost fifty cents each; remembers no other item of expense go-

ing to make up the sixteen dollars, except prize candy and other such things bought on the cars; was a horse drover, and was certain he could make ten dollars a day.

The plaintiffs introduced in evidence two coupons of tickets from New Orleans to Galveston, copy of which is as follows :

"Central Railroad of Georgia. First Class. Galveston, Texas, *via* C. of G., C. & W., W. of A., L. & N., T. M. L. T. Co. Issued by the Central Railroad of Georgia. Good for one first-class passage to Galveston, Texas, when officially stamped, and subject to the following contract: 1st. In selling this ticket, this company acts as agent, and is not responsible beyond its own line," etc.

Stamped on the back of each ticket and coupon :

"Central Railroad of Georgia. S. C: Hoge, agent. August 20, 1879."

The defendant introduced S. C. Hoge, who was sworn, and he testified that he was the agent of the Central Railroad at Macon; sold two tickets in August, 1879, to two men, who said they wanted to go to San Antonio, Texas, by way of Galveston; did not know whether plaintiff was one of the men, but these are the tickets which he sold; recognizes the stamps and remembers the date on them; it was in August, 1879. They asked witness if he could sell them tickets by Memphis to Galveston; he informed them he could not, as there was yellow fever there; the place was quarantined, and we had been notified to take the tickets off sale. He then asked witness if there was any other route they could get tickets, so as to go through on same tickets. Witness replied that he could sell them tickets through New Orleans, but he did not know whether they could get through or not, on account of the yellow fever being there. Witness knew that the yellow fever was there as well as at Memphis. Witness told them that he had not been notified to take the tickets off sale by that route, and, therefore, he had to sell them the tickets; but he did not tell them they could go through on the tickets; simply told them he was doubtful about it. Some

time after this, the same men who bought the tickets came and demanded a refunding of their money, as they said they could not get through New Orleans on them; they were referred to Major Shellman.

Major N. T. Shellman was introduced and sworn as a witness for defendant, and he testified that he was the general agent of the Central Railroad at Macon, in 1879; he remembered the plaintiff coming to him to take up the coupons of the two tickets, and to reimburse them for their expenses in going and returning from New Orleans, as they had not been enabled to go further on account of the Morgan line of steamers being quarantined or stopped by the prevalence of yellow fever at New Orleans.    Witness refused to pay them, and referred the matter to Mr. Smith, who had charge of the passenger business of the road.

A letter was received from Mr. Smith, and it was read to Combs, who seemed to be acting for himself and Richards. Witness proposed to pay twenty-five 50-100 dollars for the unused portion of the tickets, not because the road was bound, but in order to settle the matter.    Combs refused to settle, and the suit was brought.

This is all the testimony submitted by the parties in this case, and as the cases of Combs and Richards were the same in all respects, by consent of the parties, the two cases were tried together, and a verdict was rendered in each case for the sum of one hundred and thirty-nine 55-100 dollars.

The defendant moved for a new trial on several grounds.

· (1.) Because the court erred in charging the jury, " If you believe that, at the time the contract was made, these men were notified that they could not get through New Orleans to Galveston, and they agreed to take the risk to see whether they could go through or not, then they are not entitled to recover.    It is for you to say whether that was the contract or not.    If the agent of the railroad simply expressed a doubt as to their getting through, and they did not agree to take the risk, then the railroad is still liable for the actual damages, whatever they may be.

(2.) Because the court erred in charging the jury as follows: "I charge you they are entitled to recover expenses from here to New Orleans and back, expenses while there and necessary expenses on the road, also to recover the loss of time in making passage there and back."

(3.) Because the jury found contrary to the following charge: "If you believe these men made this contract with the railroad company, or its agents in Macon, for the sale of tickets, and they agreed to transport them from Macon to Galveston, then the railroad is bound to do so, unless from providential cause or something of that sort, and if they did not do it, then the plaintiffs are entitled to recover the actual damage which they have sustained by reason of the railroad company not having complied with its part of the contract."

(4.) Because the jury found contrary to the evidence and against the weight of evidence.

(5.) Because the jury found contrary to law and the equity and justice of the case.

The court overruled the motion for a new trial, and error to this court is assigned upon exceptions to this ruling.

1. There are several questions made by this record. First, is a railroad company which sells and issues tickets to passengers and persons over its own lines of road and the lines of road of other companies, known as through tickets, liable for the sure and safe transportation of such passengers or persons to the point of destination, notwithstanding there may be indorsed or printed on the tickets so sold and issued, " that the company issuing and selling such tickets shall not be liable except as to its own line of road "? It has been held by this court that, when a passenger with a through ticket over a connecting line of railroads checks his baggage at the starting point through to his destination, and upon arriving it is damaged and has been broken open and robbed, he may sue the road which issued the check, or he may sue the road deliv-

ering the baggage in .bad order. *Wolff vs. Central Rail-road Company*, 68 *Ga.*, 653; *Hawley vs. Screven et al.*, rec'rs, 62 *Ga.*, 347. In 2 Redfield on Railways, p. 292, §201, it is stated "that taking pay and giving tickets or checks through for the carriage of baggage of passengers, binds the first company, ordinarily, for the entire route." Yet this author, who cannot be considered as having any bias or prejudice against these corporations, does not assign any reason for the *dictum* above. He contents himself with citing the case of McCormick *vs.* Hudson River Railway, 4 E. D. Smith, 181.

It may be very safely assumed from these decisions that the law of this state is that, when a railroad company issues and sells a ticket over its own lines of road, and over the lines of other roads to a point designated, such company is liable to the passenger thus purchasing such ticket, who checks his baggage through on the line indicated in the ticket, for the safe and secure carriage and transportation of such baggage. And if the railroad company would be liable for the safe and secure transportation of the baggage of a passenger, which is but a convenience and incident of the passenger, it cannot be very readily perceived, why such company should not be liable for the safe and secure carriage and transportation of the passenger himself. Why is the company thus contracting, liable for the transportation of the passenger's baggage? Is it not because such is the undertaking of such company?

In the case of Illinois C. R. R. *vs.* Copeland, 24 Ill., 338, the Supreme Court of that state say this: "We hold the ticket and the check given by this company, and produced in evidence, imply a special undertaking to carry the passenger to St. Louis, *via* the Terre Haute and Alton Railroad, and his baggage also. The ticket is what is known as a through ticket, and the check denotes that the baggage is checked from Chicago to St. Louis, and both inform the passenger that the .Illinois Central has running

v 70–35

connections with the Terre Haute and Alton road, and that they can and will deliver the passenger and baggage, by means of this connection, at St. Louis. The ticket and check are both issued by the Illinois Central; they are the evidence of the contract made with them, and, in effect, speak this language: 'If you will buy this ticket, we will carry you safely to St. Louis, and your baggage also; the terminus of our road, by means of our connection with Terre Haute and Alton road, is at St. Louis, and we guarantee to you your safe arrival there with your baggage, * * * * whether we run our own cars through or take those of the other road at the point of intersection. You pay through, and you and your baggage shall be carried through.' This is the contract evidenced we think by the ticket and check." What a close analogy between the case under consideration and the Illinois case above cited! And the reason for the rule is well stated. You pay your money to go through, and the company receiving it guarantees to you that you shall go through safely; it is an implied special contract, and it is not limited by any statements written or printed on the check or ticket not signed by the passenger. In support of this doctrine see Quinby vs. Vanderbilt, 17 N. Y., 306; also Kessler vs. N. Y. C. R. R., 7 Lansing, N. Y., 62. Code of Ga., §2068.

2. There is no error in the several rulings of the court below, except as to the rule given in charge to the jury upon the measure of damages in this case. The court instructed the jury that, if the plaintiffs were entitled to recover, they could recover the passage money from Macon to New Orleans and back, expenses in New Orleans, and expenses on the passage and reasonable compensation for the time employed in the journey. This is not the correct rule of damages in this case. It is not shown by plaintiffs that they made any attempt to reach Galveston, except by the Morgan line of steamers; and it does not appear that there was no other means by which they could have reached Galveston, the point plaintiff in error had guaranteed they should go. The declaration of plaintiffs

does not so state; but avers the steamers on the Morgan line had been taken off. It may be there were other routes open at the time; and in such case, the measure of damages would be what it would have cost them to have reached their destination by other means and other routes than the Morgan line of steamers, including reasonable pay for delays; and it might be also for such special damage the party may have sustained by reason of such delay. This would have been the proper measure of damages under the facts in this case. If it should appear upon another trial that no quarantine existed when the tickets were sold, and that subsequent to the purchase of the tickets by defendants in error, the Morgan line of steamers were withdrawn, in consequence of the prevalence of yellow fever in New Orleans or elsewhere, then the plaintiffs in the court below would not be entitled to recover anything. If, however, it shall be made to appear on the next trial that the steamers had been withdrawn when they purchased their tickets, and they proceeded to New Orleans on their journey, and there was no other convenient and expeditious way by which they could reach Galveston, then they would be entitled to their expenses, and the rule given by the court below as to the measure of damages would be applicable.

Judgment reversed.