## GEORGIA SOUTHERN AND FLORIDA RAILWAY
## COMPANY v. PEARSON.

An action against a railway company for a tort may be brought in the county of the residence of the company when it has no agent in the county where the cause of action arose.

Where a passenger purchased a ticket for his transportation over several connecting railroads, and, after using the same for his passage over the initial road, was ejected from a train on a connecting road, because of the failure of the agent of the company from which he purchased the ticket to properly stamp the same, his alleged cause of action against the company that sold him the ticket, for such wrongful ejection, originated in the county where the ejection occurred, and not in the one where the ticket was purchased.

Argued April 5, — Decided June 10, 1904.

Action for damages. Before Judge Hodges. City court of Macon. June 25, 1903.

*Hall & Wimberly* and *R. C. Jordan,* for plaintiff in error.
*Ross & Grace* and *R. L. Anderson,* contra.

FISH, P. J. B. H. Pearson sued the Georgia Southern and Florida Railway Company in the City court of Macon. The allegations of his petition, so far as material to the question presented for our decision, were as follows: The defendant "is a corporation operating its business in the State of Georgia and having its principal office and residence in said county of Bibb." On May 24, 1902, plaintiff purchased a ticket from the agent of the defendant at Cordele, Ga., for transportation from that point to Charleston, S. C., and return, via the Georgia Southern and Florida Railway, the Georgia Railroad, and the Southern Railway. He used the ticket to Macon and there boarded a train, on the Georgia Railroad, for Augusta, and when he tendered his ticket to the conductor on that train, it was refused because the selling agent of the defendant at Cordele had failed to properly stamp it; at Milledgeville he was ejected from the train of the Georgia Railroad Company and had to purchase a ticket to Augusta, and at Augusta had to purchase one to Charleston, and at Charleston had to purchase one back to Cordele. He paid out for such tickets $8.97. He was ejected from the Georgia Railroad train because of the negligence of the defendant's agent at Cordele in failing to properly stamp his ticket. The ejection caused him great mortifi-

cation and humiliation, and by reason thereof and the additional expense to which he was put he was injured and damaged in the sum of $1,000. It was further alleged: "That defendant company has no agent in the county of Baldwin where said cause of action originated." The petition was demurred to upon three grounds, the first of which was met by an appropriate amendment. The second was: "This defendant demurs generally to said petition, because there are two separate and distinct actions therein contained, one action for breach of contract, and the other an action for damages in tort." The third ground of demurrer was, that the petition "shows on its face that the county of Bibb, in which said suit is instituted, has not jurisdiction' of the cause of action set out in said petition, as neither the contract was made in the county of Bibb, nor was the plaintiff ejected from the train in the county of Bibb, or ejected in any county through which the line of this defendant's road extends." The demurrer was overruled, and the case is here upon a bill of exceptions sued out by the defendant company, assigning error upon such ruling.

Counsel for plaintiff in error, both in their brief and in oral argument, stated that the second ground of demurrer was not relied on but was abandoned. The sole question for our decision, therefore, is one of jurisdiction, that is, whether the suit could be properly brought in the county of Bibb. The action was not for a breach of contract, but was for a tort by breach of duty. In the language of Chief Justice Bleckley, in *Head* v. *Georgia Pacific Railway Co.*, 79 *Ga.* 360, "It was an action upon the case for a wrong, not an action of assumpsit for a breach of the contract. It went upon the theory that the contract established the relation of carrier and passenger, a relation attended with a duty from the former to the latter, and that the duty was wrongfully violated. Where the plaintiff has a contract with the defendant which generates a relation attended with a public duty, he has his option to bring assumpsit for breach of the contract, or case for breach of the duty. Here the plaintiff brought a proper action, the contract being set out merely as inducement, with a view to raise the relation, the stress of the action being put upon his expulsion from the train, which, if wrongful, was not only a breach of the contract, but a violation of a public duty by a common carrier." In such a case, as was there held, "punitive as well as actual dam-

ages are recoverable if the circumstances of the particular case warrant such recovery." To the same effect, see *City and Suburban Railway* v. *Brauss*, 70 *Ga.* 368 ; *Central Railroad Co.* v. *Pickett*, 87 *Ga.* 734; *Seals* v. *Augusta Southern R. Co.*, 102 *Ga.* 817. Indeed, counsel for plaintiff in error admitted, both in their brief and their oral argument, that the action was not on contract, but was for an alleged tort. The Civil Code, § 2334, requires that, " All railroad companies shall be sued in the county in which the cause of action originated, by any one whose person or property has been injured by such railroad company, . . for the purpose of recovering damages for such injuries. . . But if the cause of action arises in a county where the railroad company liable to suit has no agent, then the suit may be brought in the county of the residence of such company." What was the cause of action in the present case ? It was the breach of the public duty which the defendant company owed to the plaintiff, under the relation of carrier and passenger between them, established by the contract. This cause of action must have originated where the breach of duty occurred. In our opinion, this was in Baldwin county. Whatever may be the law in other jurisdictions, in this State a railroad company which sells and issues to a passenger a ticket for his transportation, over its own line of road and over the lines of other railroad companies, is liable for his safe and sure transportation to the point of destination. *Central Railroad* v. *Combs*, 70 *Ga.* 533. This is also the rule which obtains in England. Great Western Ry. Co. v. Blake, 7 H. &. N. 987; Buxton *v.* Northeastern Ry. Co., L. R. 3. Q. B. 549. But in the great majority of the States of the Union the railroad company issuing such a through ticket is liable to the passenger for his safe transportation only as to its own lines of road. 2 Wood's Ry. Law, 1418, and cases cited in note. The law of Georgia being as above stated, when the defendant company sold and issued to the plaintiff a ticket for his transportation from Cordele, Georgia, to Charleston, South Carolina, and back, it undertook, for the consideration which it had received, to safely transport him over its own and the connecting lines of railway specified in the ticket, from Cordele to Charleston and return, and the public duty which it thus assumed was never violated until the plaintiff was wrongfully ejected from the train of the Georgia Railroad Company, in the county of

Baldwin ; and it was then as much violated by the defendant company as it would have been if the ejection of the passenger had occurred on its own line of road. When, in the county of Dooly, it failed to stamp the ticket which it sold to the plaintiff, it violated no public duty which it owed him, for it was as much bound to transport him from Cordele to Charleston and return after it had given him an unstamped ticket, as a token of the contract into which it had entered with him, as it would have been if the ticket which it had issued to him had been properly stamped. Its public duty relatively to the plaintiff was to transport him in accordance with the contract, and so long as it met and discharged this duty no tort was committed. Suppose the plaintiff had purchased from the defendant company, at Cordele, in the county of Dooly, a ticket for his passage, over its own line of road alone, from that point to the city of Macon, in the county of Bibb, which ticket the selling agent of the defendant had failed to properly stamp, and, in consequence of such failure, a conductor in charge of defendant's passenger train had ejected the plaintiff therefrom in the county of Houston, would his cause of action for the tort, in such a case, have originated in the county of Dooly, where he purchased the ticket and the failure of the defendant to properly stamp it occurred, or in the county of Houston, where he was ejected from the train ? It seems to us to be very clear that it would have originated in the latter county, because in that county, and in that county alone, the violation of the public duty which it assumed when it sold him the ticket would have occurred. What difference can it make whether the ejection was from a train on the defendant's own road, or from a train on the connecting road of another company, if the duty of the defendant, under the contract, to safely transport the passenger to his destination, applied as much to the one road as to the other ? None that we can see. In either case, the cause of action for the tort, growing out of the breach of the public duty to transport the passenger in accordance with the contract, arises in the county where the tort is committed ; and no tort is committed until such breach of duty occurs. The cause of action in the present case originated when and where the tort upon which the action was founded was committed, and this was when the plaintiff was ejected from the train on the Georgia Railroad and in Baldwin county. This be-

ing the county in which the cause of action originated and the defendant company having no agent therein, the suit was properly brought in Bibb county, in which its principal office and residence were alleged to be located.

Counsel for the plaintiff in error recognize that if the case of *Central Railroad* v. *Combs,* supra, does establish the principle that a railroad company selling a through ticket, over its own and connecting lines of road, is liable for the safe and secure transportation of the passenger to his destination, it stands in the way of their contention as to the want of jurisdiction of the city court of Macon in the present case.     Accordingly, they ask that if that case "is regarded as having decided that a railway company is liable for the safe and sure passage of a person over connecting lines, to whom it sells a ticket," it shall be "overruled or modified."     As above indicated, we do not see how this decision can be otherwise regarded; and it seems to have been uniformly so construed by courts and text-writers who have had occasion to mention or cite it.     The effect of the request of counsel is that that case shall be reviewed and overruled.     There is no request to review the case of *Hawley* v. *Screven,* 62 *Ga.* 347, which established, in this State, the principle followed in that case, and, in our opinion, it would be useless to review the case in question without reviewing the older case which, in principle, it followed. In *Hawley* v. *Screven,* it was held that "A passenger who purchased a through ticket from Savannah, Georgia, to Jacksonville, Florida, of the agent of [one railroad company], and had his trunk checked accordingly, could recover of such [company] for its loss, although it showed that there were three connecting roads between the two places mentioned, that it was the first, and that it had safely delivered the trunk to the second."     In *Wolff* v. *Central Railroad Company,* 68 *Ga.* 653, it was held:     "Where a passenger with a through ticket over a connecting line of railroads checks his baggage at the starting point through to his destination, and upon arriving it has been damaged or has been broken open and robbed, he may sue the road which issued the check, or he may sue the road delivering the baggage in bad order."     In that case the suit was against the railroad company delivering the baggage at its destination.     In the opinion in the case which we are asked to review, Judge Blandford, referring to

these two cases, said: "It may be very safely assumed from these decisions that the law of this State is that when a railroad company issues and sells a ticket over its own lines of road, and over the lines of other roads to a point designated, such company is liable to the passenger thus purchasing such ticket, who checks his baggage through on the line indicated in the ticket, for the safe and secure carriage and transportation of such baggage. And if the railroad company would be liable for the safe and secure transportation of the baggage of a passenger, which is but a convenience and incident of the passenger, it can not be very readily perceived why such company should not be liable for the safe and secure carriage and transportation of the passenger himself." It seems to us that this is sound reasoning, and that so long as these decisions in the baggage cases stand, the liability of a railroad company to a passenger, to whom it sells a through ticket over its own and connecting lines of road, for his safe transportation to his destination logically follows. This is the view taken and forcibly presented by Wood in his valuable work on railway law. He says: "In some of the States, with an inconsistency which is certainly remarkable, it is held that the first carrier, selling a through ticket, is not liable for an injury to the passenger upon a connecting line, *but is liable for the loss of his baggage* by a connecting line. This doctrine necessarily supposes that two contracts are made, one relating to the passenger's transportation, and another relative to his baggage, when in fact but one contract is entered into, which is entire and indivisible. The ticket issued to a passenger is evidence that he has paid for being carried between the *termini* named therein, and the check given for his baggage is merely evidence that his baggage has been received by the company to be carried in the usual way to the point designated upon the check. But the real contract between the parties rests wholly in parol, except so far as it may be set forth upon the face of the ticket; and the real intention of the parties is to be determined by reference to the subject-matter of the contract. . . Indeed, in the absence of any statute, the company is not at the common law bound to carry any baggage except mere personal luggage, and may make any reasonable regulations relative thereto that it chooses to make; and it seems to us that there is no foundation whatever for the distinction that is

made in the case last cited [a Tennessee case] between the liability of the carrier for the safety of the passenger, and the safe delivery of his baggage. The duty and the liability spring out of the same contract, and an inference of a limited liability as to one, and an absolute liability as to the other, can not be drawn therefrom; and we believe that the reasoning of the court in this case will fail to commend it to the courts as expressing a sound, just, or reasonable doctrine." 2 Wood's Ry. Law, § 359, pp. 1419–1422.

It is contended by counsel for plaintiff in error that "the duty of the carrier was to have given Pearson a ticket according to his contract, which would have been good for passage from Cordele to Charleston and return, and as it did not do so, there was a violation of the carrier's duty, which occurred in the county of Dooly, a tort growing out of contract, and, while the tort may not have been completed until Pearson reached the county of Baldwin, on the line of a connecting road, yet the courts of Dooly alone have jurisdiction of this case." This might be a sound argument if the tort growing out of the violation of the carrier's duty consisted in the failure to stamp the ticket which the defendant company sold to the plaintiff, but as the duty of the defendant company, under the contract which it made with the plaintiff, was to safely transport him from Cordele to Charleston and back, notwithstanding its failure to stamp the ticket, it is obvious that no tort was committed until it violated this duty. It violated this duty in the county of Baldwin, and then and there the plaintiff's cause of action, for the tort thus committed, arose.

The trial court did not err in holding that the suit could be properly brought in Bibb county.

*Judgment affirmed. All the Justices concur.*