## RILEY *v.* WRIGHTSVILLE AND TENNILLE RAILROAD COMPANY *et al.*

1. A petition alleged, in substance, the following facts: The plaintiff, a woman, purchased a through ticket between two points on connecting lines of two railway companies.  She was transported by the first railroad to a junction point on the two lines.  At that place passengers had to wait for a transfer to connecting trains, and there was no place

at such point where they could obtain accommodations. In view of these facts the two companies jointly provided and used a waiting-room for such passengers; and upon her arrival there plaintiff was told by the agents and employees of both companies to enter the waiting room, which she did accordingly. It was necessary to wait several hours for the connecting train. While so waiting, the employee in charge of the waiting-room refused to allow her to remain until the connecting train arrived, ordered and forced her to leave the waiting-room at night and in the dark, with her husband and two children who accompanied her, and closed and locked the room. She was thereby exposed to a rainstorm and made sick, and was caused pain and suffering. *Held*, that, as against a general demurrer, the petition set out a cause of action in tort against the two defendants.

2. Where plaintiff alleged generally that she purchased a ticket over both railroads between two points, by special demurrer she could be required to allege whether she purchased it from one company or the other, or its agents, or from an outsider.

3. The description of the person who forced the plaintiff to leave the waiting-room as "the employee in charge of said waiting-room" was subject to special demurrer for not alleging whether he was claimed to be the employee of the one or the other defendant, or of both.

4. An allegation that the plaintiff had to wait "several hours" for a train was subject to special demurrer, where no reason appeared why the plaintiff could not allege more definitely the time.

5. Under the facts of this case, the sustaining of the general demurrers is reversed; the sustaining of the special grounds of demurrer indicated herein is affirmed; but direction is given that the plaintiff be given reasonable opportunity to meet such grounds, before the case shall be dismissed.

6. Where a case was dismissed on demurrer, and the bill of exceptions to such ruling did not specify the answers of the defendants, and they were not directed to be sent to this court, but were voluntarily included by the clerk of the trial court in the transcript of the record, the cost taxed will not include the making of the transcript of such answers.

Argued May 7,—Decided October 13, 1909.

Action for damages. Before Judge Martin. Dodge superior court. September 9, 1908.

*Smith & Hastings, W. M. Clements,* and *R. L. Berner,* for plaintiff.

*A. F. Daley* and *J. F. DeLacy,* for defendants.

LUMPKIN, J. George M. Riley and his wife brought suit against the Wrightsville & Tennille Railroad Company and the Southern Railway Company, seeking to recover damages, which they laid at $30,000. By amendment George M. Riley was stricken from the case, leaving it to proceed in the name of Mrs. Riley. As amended, the allegations on which she sought to recover were sub-

stantially as follows: On July 31, 1906, her husband and herself purchased two tickets from Dublin, Georgia, to Macon, Georgia, over the lines of the defendants. Upon arrival at the junction point of the two lines, at Empire, where they had to change cars from the line of the Wrightsville & Tennille Railroad Company to the line of the Southern Railway Company, they entered a waiting-room which was used jointly by the passengers of the defendants while waiting for trains on said roads, and which was provided for that purpose. They had to wait several hours for the train of the Southern Railway Company which would carry them to Macon. While they were waiting inside the waiting-room for said train, the employee in charge of such room, whose name was unknown to them, forced them to leave the waiting-room, and closed and locked it, and declined to let them remain in it until the arrival of the Southern Railway Company's train. After being ejected from the waiting-room, they were exposed to the weather for several hours, and during a portion of the time there was a heavy rainstorm, and there was no other protection at said place for the accommodation of passengers of the defendants except said waiting-room. Mrs. Riley was unwell at the time, and, because of being exposed to the rainstorm, she contracted a severe cold, which caused certain sickness, pain and suffering, described. The injury to her is permanent. "The defendant companies, well knowing that passengers over their roads between Dublin and Macon, and other points, would have to stop for transfer at Empire, and that there was no place where said passengers could obtain accommodations, and in view of these facts, the said companies provided the said waiting-room for such passengers, and petitioner was told by the agents and employees of defendant companies to enter said waiting-room, and that in pursuance of such invitation and direction she entered the same and was there when she was ordered, before 10 p. m., by the employee in charge of said room to leave the same; that it was dark at the time, and she had her two children with her; and that thereafter she was exposed to the rain as hereinbefore alleged." At the time plaintiff purchased said ticket at Dublin, she was informed by the person who sold her said ticket that she would only have to wait ten or fifteen minutes at Empire for the train to take her to Macon, and the defendants were negligent .in that such information was furnished her. The

defendants were negligent· in that no .train passed Empire within an hour after she reached said place. Each defendant demurred generally and specially to the petition. The demurrers were sustained and the action dismissed. The plaintiff excepted.

1. Three things were alleged by the plaintiff as being negligent or improper on the part of the defendants: (1) That "she was informed by the person who sold her said tickets that she would only have to wait ten or fifteen minutes at Empire for the train to take her to Macon, and that the defendants were negligent in that such information was furnished her." (2) That "the defendants were negligent in that no train passed Empire within an hour after she reached said place." (3). That the employee ·in charge of the waiting-room required her and her husband, with their children, to leave it before ten o'clock at night, and before the arrival of the Southern Railway train, causing her to be exposed to inclement weather.

As to the first ground stated, in order to charge the defendants or either of them with negligence, if there was any, because certain information was given to the plaintiff, it was necessary that it should appear that the person who furnished it represented them or one of them. It was alleged in the original petition that Mr. and Mrs. Riley purchased two tickets from Dublin to Macon over the lines of the defendants; but there was no allegation as to whom they purchased the tickets from, whether the agent of one of the defendants, or of the other, or of both, or of neither. It was not even alleged that they were purchased at the ticket-office of either of the defendants.

The second ground stated above, taken alone, evidently set out no negligence which would form basis for recovery. The mere fact that no train passed the junction point within an hour after a passenger reached it over another road was not ipso facto negligence on the part of either company.

If the petition set forth any right to recover, it must rest on the third ground above indicated, namely, the requiring of the plaintiff, with her husband and two children, to leave the waiting-room, in the dark, and closing and locking it up before ten o'clock at night, and before the arrival of the connecting train to await which she had been shown into the waiting-room, there being an

interval of "several" hours before the arrival of the connecting train.

In some of the States there are statutes on the subject of keeping open waiting-rooms. Most of these have reference to waiting-rooms at stations where the traveller begins or ends his journey, are for the benefit of travellers entering or leaving trains at those points, and deal with such a situation rather than with a waiting-room at a junction, for through passengers. The act of 1906 (Acts 1906, p. 101) was passed shortly after the occurrence involved in this suit, and therefore need not be considered. In the absence of a special law on the subject, the general rule is that a railroad company may make reasonable rules in regard to its depots and waiting-rooms. A person going to a station has no absolute right to require the waiting-room to be kept open and in comfortable condition for passengers an unreasonable length of time before that fixed for the departure of the train, nor to use the room for lying down and sleeping. Central Ry. Co. v. Motes, 117 Ga. 923 (43 S. E. 990, 62 L. R. A. 507, 97 Am. St. R. 223); Brown v. Georgia, C. & N. Ry. Co., 119 Ga. 88 (46 S. E. 71); Phillips v. Southern Ry. Co., 124 N. C. 123 (32 S. E. 388, 45 L. R. A. 163). It will be observed that the two cases last cited involved taking a train at a starting point, not waiting at a junction, by a passenger over two roads; and the suit in the Brown case was also held to be for a breach of contract as to passage on a particular train. In St. Louis Southwestern Ry. Co. v. Foster, 112 S. W. 797, the Court of Civil Appeals of Texas held that where a railroad company sold through tickets from a point on one of its lines to a point on another, and the passengers had to wait at a junction, in making necessary changes, from one train to another, they were still its passengers and entitled to remain in the waiting-room until the arrival of their train. This differed from the present case in that the two lines were those of the same company. But the opinion discusses the difference between initial points and junctions, and persons entering on their journey and through passengers. In Phillips v. Southern Ry. Co. supra, this distinction was recognized by Furches, J., who said: "The rule would probably be different in the case of through passengers and in case of delayed trains; but, if so, these would be exceptions, not the rule." If the contention of each of the defendants were sustained, the re-

sult would be that a female passenger might buy from a railroad company a through ticket over its road and a connecting road, and might be carried to a junction where a joint waiting-room was provided and maintained for such through passengers to await the connection, at a point in the country where no other accommodations could be obtained, and there the carriers might place such passenger in the waiting-room for the purpose of awaiting the connecting train, and then turn her out at night in the dark, regardless of the weather, to await the coming train as best she could. When sued the first company could reply that she had ceased to be its passenger· after reaching the junction, and that no duty rested on it to keep open the station; and the other could reply that it was only required to keep open its station for a reasonable time before its train arrived; and so the passenger could be turned adrift at night, and nobody be responsible. In the absence of any privilege to stop along the way, a through passenger on a single ticket good for one continuous-trip can not, at his pleasure, stop and take other trains, but must continue the trip. On the other hand, can the connecting carriers, during a short interval of a few hours before between connecting trains, place the through passenger in a room to await the next train, and then turn him out before it arrives, thus severing and renewing their relation and duty to him at will? This was not a question of whether the carriers were required to provide a waiting-room at that point, or whether, as to persons seeking to become passengers there, the companies could make reasonable regulations within certain limits as to the time for opening the waiting-room; but the allegation here was that they did jointly provide and use a waiting-room for through passengers waiting at that point for connecting trains of the two roads, in view of the situation there; that the agents and employees of both companies told her to enter such room; that, after so doing, the employee in charge of the room forced her to leave it before the connecting train arrived, at night and in the dark, though there was no place where passengers could obtain accommodations; and she was thus subjected to cold and rain. Although the petition failed to allege that the Wrightsville & Tennille Railroad Company or its agent sold the ticket, yet it was alleged that the plaintiff had a through ticket over both roads, and apparently the first road transported her to the junction point, thereby recognizing her right to be carried as a

passenger; and the agents of both companies recognized her as belonging to the class for whose use the waiting-room was provided and maintained, by directing her to enter it. There has been quite a difference in the expressions of various courts in stating when the relation of passenger and carrier begins and ends. Much of this diversity grows out of the fact that the courts were dealing with the facts of particular cases before them, and discussing when, under such facts, the relation began and terminated, and were not endeavoring to lay down any universal rule, or to declare that no variations could arise under different circumstances. *Mc-Bride* v. *Georgia Ry. &c. Co., 125 Ga.* 515 (7), 518, 519 (54 S. E. 674). We have found no case where, under allegations like those here made, it has been held that no cause of action was set out. On the general subject of a depot of one company used by another, see *Central R. Co.* v. *Perry, 58 Ga.* 461. This was a suit for a tort; and we think such allegations made a joint tort, and there was no misjoinder of defendants.

As against the general demurrer, the petition set out a cause of action. Some of the grounds of the special demurrers were met by amendments; others were not.

2. It was alleged that the plaintiff purchased a ticket from Dublin to Macon. By special demurrer she was called on to state from whom she bought it; but she declined, or at least failed, to do so. Nevertheless in the brief of her counsel in this court this was treated as a good allegation that she bought it from the Wrightsville & Tennille Railroad Company, and it was sought to invoke, as against that company, the ruling in *Central R. Co.* v. *Combs, 70 Ga.* 533 (48 Am. R. 582), and *Georgia Southern R. Co.* v. *Pearson, 120 Ga.* 286 (47 S. E. 904), to the effect, that, "whatever may be the law in other jurisdictions, in this State a railroad company which sells and issues to a passenger a ticket for his transportation over its own line of road and the lines of other railroad companies is liable for his safe and sure transportation to the point of destination." This ruling does not accord with the view taken by a number of courts. Under such a general allegation, it might be possible to show that the ticket was sold by one of the defendants, or the other, or by a joint agent, or was purchased from a third party. Why should each of the defendants be put to the trouble and expense of having testimony ready to meet the possible contention

that it sold the ticket, and then be met with the statement that there was no allegation that it did so? They were entitled to know what the plaintiff did mean to allege on that subject. The demurrer of the Southern Railway Company was not so specific as to this point, but it set up that it did not appear that plaintiff made any contract with it, or had any contractual relation with it, or that it in any manner became a party to any contract of passage made by the plaintiff. The reply made in the brief of counsel for plaintiff in error was that plaintiff "could not give the name of the person who sold the tickets [to plaintiff and her husband], nor could she know by what authority the tickets were sold." This was not a sufficient answer. The demurrer did not call for a mere name. But each of the defendants had a right to know whether the plaintiff claimed to have bought a ticket from it or its agent or ticket seller. She doubtless knew where, at what depot, or ticket window, or from what railroad she got her ticket, or whether she purchased it from an agent of either road, or from an outsider. We recognize the fact that one may become a passenger on a railroad without alleging specifically the details of purchasing his ticket, or even without a ticket; but in such event he must rely on the facts appearing and the law applicable to them. If he wishes to rely on duties arising from a particular basal fact, he should allege it, and he should not do so ambiguously, when called on by special demurrer to make his allegations plain.

3. Again, she alleged that the person who required her to leave the waiting-room was "the employee in charge of such waiting-room." The special demurrer made the point that this was not a sufficient allegation as to whose employee he was claimed to be. There were four possible lines of contention along which the plaintiff might proceed under such an allegation: that the person causing her to leave the room was an employee of the Wrightsville & Tennille Railroad Company, for whose tort it was liable; that he was an employee of the Southern Railway Company, for whose tort it was liable; that he was the employee of both defendants; or that, whether actually employed by one or the other, under the joint management of the waiting-room, he represented both and acted for both in connection therewith. If there was a tort, it was committed by this person, and certainly the defendants were entitled to know what the plaintiff's contention was on that subject, so as

to be prepared to meet it. In this State substance rather than niceties in technical form is of importance. Great liberality is allowed in pleadings and amendments, and different aspects of a case can be presented in different counts. Useless detail and elaboration are not required. But there is no reason to permit vital facts in a case to be pleaded in vague, uncertain, or ambiguous terms, which may have the effect of not putting the adverse side on notice as to how to prepare the defense, or to allow the pleader to fail or refuse to amend as to such matters when called on to do so by appropriate demurrer.

4, 5. Again, the plaintiff alleged that she had to wait "several hours" for the Southern Railway train. The demurrers called for some idea as to what was meant by "several." The plaintiff may not know the exact time, but she must know approximately whether she means three or four, ten or twelve, or eighteen or twenty hours. At least she showed no reason why she could not be more specific. The presiding judge sustained this ground of demurrer, and we hold that he did not err. Whether this point was of such materiality as to have required a reversal, if he had declined to dismiss the case on account of it alone, is not in question. The other grounds of the demurrer were cured by amendment, or were not such as to require discussion.

Counsel for plaintiff in error in his brief requested, that, if this court should hold that the presiding judge erred in sustaining the general demurrer, but that one or more grounds of special de-- murrer were well taken, direction should be given that he have the privilege of amending to meet such grounds. The presiding judge sustained the grounds of the demurrers generally, thus including both the general and special grounds. More than two years have elapsed since the transaction complained of occurred, and if the dismissal should be affirmed, the bar of the statute might have attached. In view of the facts of the case, we think it a proper one for the exercise of the directory power of this court, to reverse the ruling on the general demurrer, affirm the ruling sustaining the grounds of special demurrer above indicated, and direct that the plaintiff be given a reasonable opportunity to amend so as to meet such grounds, before the case shall be dismissed.

6. The clerk of the superior court included in the transcript of the record the answers of the two defendants. The case was

determined on demurrer. These answers were not material to a decision of the questions made, and were not specified in the bill of exceptions, nor ordered to be transmitted. The plaintiff in error raised the point that she should not be taxed with the cost of sending them to this court. This contention was correct.

*Judgment reversed, with direction. All the Justices concur, except Evans, P. J., disqualified.*