1961.  LOUISVILLE AND NASHVILLE RAILROAD COMPANY *v.* FORREST.

1. When the relation of passenger and carrier has been created, the carrier is bound to exercise extraordinary care and diligence in performing all of the duties imposed by that relationship.
2. One who enters a railroad passenger-coach with a ticket bought from an agent of the railroad, giving him passage or transportation from the starting point to the point named in the ticket, is a passenger upon the railroad, and is entitled to the rights of a passenger, and the railroad company must use extraordinary care and diligence towards such passenger. If the passenger does some act which gives the railroad company a right to terminate the relationship, the right must be exercised without unnecessary force and violence, and without violating the duty of respectful treatment, which continues until the passenger has been actually ejected from the conveyance.
3. Where there has been a breach of a duty giving rise to a cause of action, and the injured party claims punitive damages, all the surrounding circumstances, accompanying the breach of duty, may be given in evidence to the jury.

Action for damages, from city court of Cartersville—Judge Foute. May 6, 1909.

Submitted July 19,—Decided October 13, 1909.

*D. W. Blair, Neel & Peeples,* for plaintiff in error.

*Thomas W. Milner & Sons,* contra.

RUSSELL, J.  Forrest purchased a ticket from Cartersville to Fairmount on the line of the railroad company, and got aboard the train at Cartersville about twenty minutes before the train was scheduled to depart. He was very sleepy and tired, and had had one or two bottles of beer during the day, and, soon after he settled himself in a seat on the passenger-coach, he dropped off to sleep. He was still asleep when the train pulled out. When the conductor came through the coach collecting tickets he caught Forrest by the sleeve, shook it, and asked for his ticket; but Forrest did not wake up and did not hear the conductor ask for the ticket. The conductor collected tickets from people all about Forrest, and came

back to him and shook him again, and this time Forrest apparently waked up; and the conductor said, "Where are you going?" Forrest replied, "I ain't going anywhere, I want to get off at Fairmount?" The conductor then said, "What in the hell did you get on here for? God damn it, you think we aint got nothing to do but start and stop?" The conductor then stopped the train, caught Forrest by the arm, and pushed him out of the coach and off the train, and gave him a kick in the back as he was leaving the platform. There are material conflicts in the evidence, but the verdict of the jury establishes this summary as the truth of the transaction. The plaintiff did not hear the conductor ask him for a ticket, and did not realize why he was putting him off the train, as he was not fully awake and conscious until after he was on the ground. He had his ticket in his pocket at the time, and did not understand that the conductor was putting him off the train because of his failure to produce the ticket. He did not hear the conductor ask for the ticket. After he was put off the train, he walked back to Cartersville and spent the night at a hotel. He entered suit against the railroad company for exemplary damages, and recovered a verdict for $300. The railroad company excepts to the overruling of its motion for a new trial, complaining of errors in the charge of the judge and also of a ruling in admitting testimony.

1. There can be no question that the evidence shows a plain violation of the duty owing by the carrier to the plaintiff as a passenger. When he purchased a ticket and got aboard the proper train to make the journey the relation of passenger and carrier was created, and the carrier became bound to use extraordinary diligence in performing all the duties imposed by that relationship. One of the duties which a carrier owes its passengers is that of respectful treatment, and a breach of this duty will give rise to a cause of action. If, therefore, there were any theory upon which it could be conceived that the ejection of the plaintiff from the train under the circumstances was legal, the ejection should not have been accompanied by such unusual force and harshness. If, after the relationship of passenger and carrier is created, the passenger does something which authorizes the carrier to terminate the relationship, and eject the passenger from the conveyance, the ejection should not be accompanied by profane epithets and kicks in the back. But under the evidence in behalf of the plaintiff, the ejec-

tion was illegal. The conductor did not ask the plaintiff for his ticket, but simply aroused him from his sleep and asked him where he was going, and, on being told that he was not going anywhere, that he wanted to get off at Fairmount, the conductor immediately stopped the train and put him off, not at Fairmount, but at a point only a few miles from Cartersville. In ascertaining whether or not the passenger had been guilty of an act authorizing his ejection from the conveyance, the carrier is bound to the use of extraordinary diligence; and the conductor in the case at bar did not use that degree of diligence. He really put a sleeping passenger off the train because the passenger told him while half awake that he did not want to go anywhere, that he wanted to get off at Fairmount. From what has been said it will be seen that there is no merit in the exception to the following portion of the judge's charge: "If you believe, from the evidence, that the plaintiff purchased a ticket from defendant, and boarded its train for the purpose of riding to Fairmount, then he became defendant's passenger, and the law required of defendant the exercise of extraordinary diligence for his protection and safekeeping, and this continued so long as he remained a passenger." It is claimed that the charge is erroneous for the reason that the conductor was bound only to the use of ordinary care and diligence in waking the plaintiff from his sleep, and making him understand that his fare was being demanded. But it must be borne in mind that the relation of passenger is created in cases of this kind before the carrier actually collects the tickets; and when it is once created the carrier must exercise extraordinary diligence in all of its dealings with the passenger. The duty of collecting the tickets must be performed with extraordinary care and diligence, just as the duty of safely transporting the passenger without injury from accidents and other casualties must be. It is further claimed that the charge was not applicable to the case at bar, which is based on an alleged positive tort, and not upon negligence; and that the charge was calculated to lead the jury to believe that punitive damages could be assessed for mere negligence. The plaintiff's cause of action was based on negligence, the negligence being the failure of the carrier to exercise extraordinary care and diligence in its dealings with him while a passenger. This was the breach of duty out of which a cause of action arose. The plaintiff's right to recover exemplary damages would not arise unless the

breach of duty was accompanied by aggravating circumstances, either in the act or in the intention. It appears, from the charge of the judge, that he instructed the jury fully as to the rules of law governing the recovery of punitive damages, and made it plain to them that although there may have been a tort committed by the carrier in ejecting the passenger, the commission of this tort would not create a right to claim exemplary damages, unless it was accompanied by the circumstances enumerated in the Civil Code, §3906.

2. The judge further charged the jury that "One who enters a railroad passenger-coach with a ticket bought from an agent of the railroad, giving him passage or transportation from the starting point to the point named in the ticket, is a passenger upon said railroad, and is entitled to the rights of a passenger, and the railroad must use extraordinary care and diligence towards such passenger." It is insisted by counsel for the plaintiff in error that this charge excluded from the consideration of the jury the contention that the plaintiff was not a passenger, because he failed to produce and surrender his ticket when called for by the conductor. Conceding that the charge does exclude this contention, it would not be erroneous; for the contention itself is without merit. If the plaintiff entered the conveyance under the circumstances stated by the judge, he was a passenger, and his subsequent conduct might give the carrier a right to terminate the relation; but until properly terminated, the plaintiff would be a passenger and would be entitled to extraordinary care and diligence. It appears that the judge fully instructed the jury, in another portion of his charge, as to when and under what circumstances the carrier would have a right to terminate the relation of passenger. The other exceptions to the charge are without merit. They raise the same questions which have been discussed above. On the whole the charge was a model one, and if any errors were made at all, they were in favor of, and not against, the complaining party.

3. It is claimed that the judge erred in allowing one of the witnesses to testify that the plaintiff was ejected at a point where there was a switch-engine coming down the track toward him, and a freight-train also moving about on the side-tracks. It seems that the plaintiff was ejected at a place called Junta, at which the defendant has several side-tracks. The evidence was properly ad-

49

mitted, on the idea that it tended to show that the passenger was ejected at a dangerous place, and that this was an aggravating circumstance to be considered by the jury in determining the right to recover exemplary damages. It was relevant for that purpose.

These are all the assignments of error. It will thus be seen that the trial was free from errors of law, and that a pure, simple question of fact, about which there was conflicting evidence, was settled by the jury in favor of the plaintiff.　　　*Judgment affirmed.*