25859. SOUTHEASTERN GREYHOUND LINES *v.* SUITS.

DECIDED MARCH 4, 1937.

*Haas, Gambrell & Gardner, Wright & Covington,* for plaintiff in error.

*W. B. Mebane, Maddox, Matthews & Owens,* contra.

BROYLES, C. J. Claude H. Suits brought suit against the Southeastern Greyhound Lines, alleging, in part, that while the return part of a round-trip ticket (bought by him) from Atlanta to Rome over the defendant's lines was in force, he approached the bus of the defendant company at the bus station in Rome for the purpose of boarding the bus of the defendant company and returning to Atlanta, and the driver of the bus refused to let him ride, stating: "You can't ride this bus; we don't have drunkards on this bus . . I am talking to you; go in and get your money back, you can't ride this bus, you are drunk;" that he explained to the driver that he was not drunk but sick; "that he was a world-war veteran, gassed and wounded in France, and that he was suffering with tuberculosis and wounds, was on a furlough from the United States veterans' hospital in Atlanta, and that it

was necessary for him to be back at said hospital at 9 o'clock that night, because his furlough ran out at that time. He told said bus driver further, that he was suffering terribly, and that he was very anxious to not be delayed, but to get back to Atlanta and get back into the hospital;" that the bus driver replied, "Regardless of who you are, or your condition, you can't ride this bus;" that petitioner, on being refused transportation on the bus, was compelled to go to the depot of the Southern Railway Company, and to purchase a railroad ticket, at an expense of $1.20, from Rome to Atlanta; "that said false language and false accusations to your petitioner by the bus driver of the defendant, in charging your petitioner with being drunk, and the refusal of the agent of the defendant to permit your petitioner to board its said bus, as petitioner had a right to do, was wrongful and illegal, and greatly humiliated and embarrassed your petitioner, and wounded your petitioner's feelings, causing him great physical and mental pain and suffering, and said conduct on the part of said driver and conductor of the defendant, being wilful, entitles your petitioner to punitive damages from the defendant for which he sues, all to his injury and damage in the sum of $2000; and petitioner prays that he have and recover said sum from said defendant." The jury returned a verdict of $201.20 for the plaintiff. The defendant's motion for new trial was overruled, and on this judgment error is assigned. Counsel for the plaintiff in error state in their brief that the exception to the overruling of the demurrer to the petition "is without merit, and the same is specifically withdrawn." Therefore the record presents a petition, as shown by the foregoing statement, which specifically claims punitive damages and which is not attacked by demurrer; and also shows that all issues of fact, upon conflicting evidence, were settled by the jury in favor of the plaintiff.

The first special ground of the motion for new trial alleges that there is no evidence to show that the acts or conduct of the bus driver, in refusing passage to the plaintiff, were in bad faith, or that his acts were intentionally oppressive or malicious, and for said reason the finding of the jury of damages in the amount of $201.20 is excessive, and there is no evidence to support the finding. Bruce Suits testified that when the plaintiff presented himself for passage on the bus, the driver of the defendant's bus said

to the plaintiff: "You can't ride this bus; you are drunk," and when the plaintiff told him that he was not drunk but sick, and that his time to get back to the hospital was up at 9 o'clock, the bus driver said: "I don't care what your time is; you are not riding this bus, I am not carrying any drunkards." There was other evidence to the same effect. This language, given its ordinary significance and construction, and uttered at a public bus station in the presence of others, was calculated to humiliate and embarrass the plaintiff; and such language, coupled with the driver's refusal to transport the plaintiff on the ground that he was drunk (which is admitted by the defendant), authorized the jury to find that the acts of the driver were intentionally oppressive or malicious, as he was presumed to intend the natural consequence of his acts. Bailey Gordon testified: "This gentleman in charge of the bus, he came over in front of this man [the plaintiff] and jerked off his glasses the way I indicate, and stepped back like he was going to strike him, and says, 'You can't get on that bus.'" On cross-examination the witness said he was in Washington, D. C., on February 4, the date of the alleged injury. However, on redirect examination he swore: "I saw what I have stated between Suits [the plaintiff] and Kane [the bus driver]; it doesn't make any difference what day it was." The plaintiff testified that Bailey Gordon was on the bus on the day in question. Since Gordon must have been mistaken, either as to the time he was in Washington, or as to seeing the acts about which he testified, and since he swore that he was positive about seeing the acts as stated, regardless of the date, the jury, who determine the credibility of witnesses, could have accepted either view. They may have disbelieved his testimony and based their verdict on other evidence; but if they determined that the driver did so approach and address the plaintiff, as testified to by Gordon, then the testimony of Gordon would supplement the evidence hereinbefore referred to, and would more strongly indicate that the driver's conduct was intentionally oppressive or malicious. There is no merit in this ground.

The second special ground alleges that the court erred in submitting to the jury the question of punitive damages, because the action was based on a breach of contract. The allegations of the petition, and the evidence in support thereof, show that the gist

of the action was the breach of a public duty by a common carrier, and that the contract was relied on merely as inducement. And the verdict for $201.20 was obviously for $1.20 railroad fare, and $200 for punitive damages because of the mental pain, humiliation, and embarrassment suffered by the plaintiff as alleged in the petition. "Where the plaintiff has a contract with the defendant which generates a relation attended with a public duty, he has his option to bring assumpsit for breach of the contract, or case for breach of the duty. Here the plaintiff brought a proper action, the contract being set out merely as an inducement, with a view to raise the relation, the stress of the action being put upon his expulsion from the train, which, if wrongful, was not only a breach of the contract, but a violation of a public duty by a common carrier. In such a case . . 'punitive as well as actual damages are recoverable,'" where there is evidence to show aggravating circumstances in the act or the intention. *Ga. So. & Fla. Ry. Co.* v. *Pearson,* 120 *Ga.* 284 (47 S. E. 904). See also *City & Suburban Ry.* v. *Brauss,* 70 *Ga.* 368, 379; *Georgia Railroad &c. Co.* v. *Eskew,* 86 *Ga.* 641 (12 S. E. 1061, 22 Am. St. R. 90); *Head* v. *Ga. Pac. Ry. Co.,* 79 *Ga.* 358 (7 S. E. 217, 11 Am. St. R. 434); *Mabry* v. *City Electric Ry. Co.,* 116 *Ga.* 624, 626 (42 S. E. 1025, 59 L. R. A. 590, 94 Am. St. R. 141); *Williamson* v. *Central Ry. Co.,* 127 *Ga.* 125 (4 b), 132 (56 S. E. 119); *Ga. Ry. & Power Co.* v. *Turner,* 33 *Ga. App.* 101 (5) (125 S. E. 598); *N., C. & St. L. Ry. Co.* v. *Mooneyham,* 37 *Ga. App.* 236 (2) (139 S. E. 589); *L. & N. R. Co.* v. *Chivers,* 11 *Ga. App.* 236 (75 S. E. 13); *L. & N. R. Co.* v. *Forrest,* 6 *Ga. App.* 766 (65 S. E. 808).

The third special ground alleges that the court erred in charging the jury as follows: "In every tort there may be aggravating circumstances, either in the act or in the intention; and if the jury find that there were such aggravating circumstances, they may give additional damages, either to deter the wrong-doer from repeating the trespass, or as compensation for the wounded feelings of the plaintiff." This is practically the language of the Code, § 105-2002, and the charge was applicable to the issues in the case.

Ground 4 alleges that the court erred in failing to give the jury a rule for measuring the amount of punitive damages. The Code, § 105-2003, declares: "In some torts the entire injury is

to the peace, happiness, or feelings of the plaintiff; in such cases *no measure of damages can be prescribed,* except the enlightened conscience of impartial jurors. The worldly circumstances of the parties, the amount of bad faith in the transaction, and all the attendant facts should be weighed. The verdict of a jury in such a case *should not be disturbed,* unless the court should suspect bias or prejudice from its excess or its inadequacy." (Italics ours.) The court's charge conformed to the provisions of this section. It properly instructed the jury that if they found certain specified things to be true, "the plaintiff would be entitled to punitive damages in a sum you may fix;" and if they found certain other specified things to be true, "the plaintiff would not be entitled to punitive damages in any sum whatever. You will look to all the evidence in this case, giving it such weight and credit, under the rules of law I have given you, and determine what the truth of the transaction is." Under these instructions, the only thing the jury could do in fixing the amount of punitive damages was to fix such a sum as they conscientiously believed was right under "all the evidence," and presumably this is what they did, in accordance with law. There is no maximum or minimum amount of punitive damages prescribed by our law, nor is it measured by earning capacity or expectancy of life.

The excerpts from the charge which are complained of in grounds 5 and 6 of the motion, which it is not necessary to quote here, are not erroneous in the light of the pleadings and the evidence. This suit was not based solely on a breach of contract. As stated in *Head* v. *Ga. Pac. Ry. Co.,* supra, the contract was set out merely as inducement, and the suit was for a "violation of a public duty," resulting in the alleged humiliation, embarrassment, and mental pain to the plaintiff. And punitive damages are recoverable in such a tort as this if the circumstances were aggravated either in the act or the intention. The court charged the jury: "If you find that the driver of the defendant's bus actually believed that the plaintiff was intoxicated, and had reasonable cause to so believe, and that in good faith, and acting upon his belief, he refused to permit the plaintiff to enter the bus, the plaintiff could not recover punitive damages. . . The plaintiff would not be entitled to recover of the defendant punitive damages unless you find that the defendant's driver acted at the time in

bad faith, or that his acts were intentionally oppressive, or were malicious; . . and before you would be authorized to find a verdict for the plaintiff in any sum as punitive damages, you must find that the driver so acted. . . To authorize a finding of punitive or exemplary damages, the jury must be satisfied from the evidence that there was some wilful misconduct on the part of the employee of the defendant which would give rise to the presumption of a conscious indifference to consequences; there must be evidence satisfactory to the jury, either of malicious wantonness or of an oppression by the employee as against the person claimed to have been denied his legal rights." Such instructions were not injurious to the defendant. It is true that the evidence would have amply authorized the jury to find, not only that the defendant's bus driver had good grounds to believe, and did in good faith believe, that the plaintiff was intoxicated when he was refused permission to ride on the bus, but also that the plaintiff was in fact intoxicated on that occasion. However, there was some evidence authorizing a finding to the contrary; and it is well settled that where there is *any* evidence, however slight, to support the finding of the jury, and that finding has been approved by the trial judge, and no error of law appears, this court is without authority to interfere.

*Judgment affirmed. MacIntyre and Guerry, JJ., concur.*