*J. M. Rudolph* and *Sam P. Maddox,* contra.

---

WILLIAMSON *v.* CENTRAL OF GEORGIA RAILWAY CO.

127  125
Case 2
f127  359

1. With respect to the care of passengers on a railroad train and the duty of making contracts for passage, between points on his run, with persons who are permitted to board the train without tickets, the conductor of the train is the alter ego of the carrier. When such conductor allows a. person without a ticket to board a train and pay a cash fare to any par-

ticular point, a valid contract immediately arises between the carrier and such person, by virtue of which such person becomes entitled to be transported as a passenger to the station of the company at the place to which fare is paid.

2. After a person becomes a passenger in the manner described in the preceding note, the carrier is bound to extraordinary diligence in the protection of his life and person until the relation ceases to exist.

3. If, at the time of paying the fare, the conductor and passenger stipulate that the latter may be put off at an intermediate point before reaching the destination to which fare was paid, the conductor will be bound to afford the passenger opportunity for leaving the train at that point, and will be bound to extraordinary diligence in seeing that he does not stop the train and induce the passenger to leave at a different place than that named in the stipulation.

4. If, after so stipulating, the servants of the carrier are guilty of any negligence resulting in a breach of duty owing to the passenger, the carrier will be liable at least for nominal damages.

(a) If the breach of duty results only in fright unattended by any physical injury, and the fright produced is not of such character as itself to produce physical or mental impairment, such fright will not be sufficient cause for the allowance of damages.

(b) If the breach of duty be brought about by the wilful misconduct of the conductor in causing the passenger to leave the train at a dangerous place in the nighttime, the same being a place other than that at which he has agreed to stop to allow her to alight, the carrier will be liable for punitive damages.

(c) Some of the grounds of special demurrer are well founded and others are not; but the case having been erroneously dismissed, there being a cause of action set forth, the judgment must be reversed.

Submitted July 18,—Decided December 14, 1906.

Action for damages. Before Judge Hamilton. City court of Floyd county. August 29, 1905.

This is an action for damages on account of alleged negligence on the part of the defendant's conductor in putting the plaintiff off the train in which she was riding, at a place different from that at which she had requested to get off, and under circumstances which, it is alleged, tended to aggravate the injury and operated greatly to her inconvenience and distress of mind. Among other things, she alleged that on the afternoon of October 1, 1904, she boarded the southbound passenger train of defendant at Morrison's, a small station about five miles from Rome, and paid her fare to be carried to the latter place. She had with her two small children and two baskets as baggage. When she paid her fare to the conductor on the train she informed him that she desired to get off

at the Rome & Decatur crossing, about one mile west of Rome, said crossing being a place where defendant often stopped its train and put off and received passengers.    At this request the conductor agreed to stop at said crossing and put off petitioner as requested. She had notified her husband that she would get off the train at said place, and expected him there to assist her with her children and baggage.    The train was scheduled to reach Rome at about seven o'clock in the evening, which at that time was after dark.    It was dark when she got on the train.    The train was stopped at a point about one fourth of a mile north of said crossing, and the conductor "took up petitioner's baskets and told petitioner to come on and get off."    He preceded her to the door of said car and placed the stool used to assist passengers off down upon the ground, and assisted petitioner off, she in good faith believing that she was being put off at the place aforesaid.    She was at that time not acquainted with said crossing, and acted entirely upon the direction of the conductor.    Outside of said train all was dark and petitioner could not see anything.    After the train had left, petitioner found that she had not been put off at said crossing, but, as she afterwards learned, was put down in the woods a fourth of a mile north of said crossing, where there were no lights, no accommodations for passengers, and no way to get out except through dark woods, or over high and dangerous railroad trestles.    The plaintiff had with her a sister-in-law and the two children, they were strangers in a strange place, and in their endeavor to find their way out became lost and wandered about in the woods for about two hours at night until the cries of her baby attracted the attention of persons who came to their rescue and carried them to their home.    During all of this time petitioner was greatly frightened and distressed and suffered mental anguish, and but for the cries of her child so attracting attention she would have been compelled to spend the night in the woods.    It was gross negligence in the defendant to put her off at said point.    The conductor well knew that he was not putting her off at the place that she desired to get off; that she had the two children and baggage; that no man was with her to assist her or protect her; and that it was dark at the point that she was put off.    The said train went on south to the Rome and Decatur crossing and there stopped, and other parties were let off.    If the conductor had had the least regard for petitioner

and her safety, he would have known that he had put her off at the wrong place, and he could have easily backed up his train a few hundred yards and taken her on again and carried her to the place she had indicated, and thus have saved her the fearful experience that she was compelled to endure for the next two hours, as before set out. It was further alleged that by reason of said acts she was entitled to punitive damages. The prayer was for process requiring the defendant to appear and answer the plaintiff in the premises. The defendant demurred on the following grounds: (1) The averments in the petition are not sufficient in law to maintain the action against this defendant. (2) The averments relating to petitioner's children, her baggage, and her sister-in-law are immaterial, irrelevant, and constitute no basis for the recovery of damages; and so as to the averments relating to notice alleged to have been given by petitioner to her husband and her expectation in relation thereto. Said averments are uncertain and indefinite; no breach of contract is averred, and no cause of action is set forth. (3) The acts of the petitioner and occurrences that transpired after she alighted from the train, and her alleged mental distress on account thereof, constituted no part of the alleged tort; they were not the result of any effort on her part to reach her point of destination, and are too remote and contingent to be the basis of a recovery. The averment that the conductor could have backed the train from the Rome & Decatur crossing and could have taken on petitioner again is speculative and argumentative. (4) The averments in the petition do not make a case for the recovery of punitive damages. The court sustained the demurrer generally, specifying no particular ground. The plaintiff excepted.

*M. B. Eubanks,* for plaintiff.

*J. Branham* and *G. E. Maddox,* for defendant.

ATKINSON, J. 1. The Civil Code, § 3029, provides that "a principal is bound for the care, diligence, and fidelity of his agent in his business; and hence he is bound for the neglect and fraud of his agent in the transaction of such business." In the case of *Western R. Co.* v. *Young,* 51 *Ga.* 489, this court ruled: "If the conductor of a railroad train agreed to put a passenger off at a particular place which is not a station or regular stopping place, it would be the duty of the conductor to stop the train at that place, so that the passenger could get off in safety." In that decision the

conductor is treated as the alter ego of the company with reference to making the contract for transportation then under consideration; and his right to make a contract binding the company to put the passenger off at a place other than a station is recognized and ruled. In the opinion, page 492, after stating the rule as above quoted, the court says further: "It can not affect the rule that the passenger had a ticket only to the station last passed before reaching the place at which he was to be put off. The conductor had the power to demand and receive any additional fare accruing for carrying a passenger to a point beyond the station to which his ticket entitled him to be carried." In support of the conclusion last quoted, Judge Trippe cited *Ga. R. Co.* v. *McCurdy*, 45 *Ga.* 288, wherein it was said: "If he were to take fare for four miles, he would be bound to put his passenger off there." In *McCurdy's* case the ruling of the court was put, among others, upon Philadelphia R. Co. *v.* Derby, 14 How. (55 U. S.) 468, wherein it is said: "A master is liable for the tortious acts of his servant when done in the course of his employment, although they may be done in disobedience of the master's orders." Applying what has been said to the case at bar, it is manifest, that with reference to the conduct of the conductor, of which complaint is made, the conductor was the alter ego of the defendant. He was placed in charge of the train for the purpose of carrying passengers, between distant points, and given authority, among others, to collect cash fares from passengers. Under such conditions when a cash fare would be collected, there immediately arose a contract between the passenger and the carrier acting through its agent, the conductor, by which the passenger would be entitled to transportation on the defendant's train to the point to which the fare was paid. In the negotiation just described the passenger represents himself and the conductor represents the carrier, and consequently both parties to the contract are represented, and upon the payment of the fare the defendant is bound to execute the contract by carrying the passenger to the place agreed upon. Under the decisions hereinbefore cited, the conductor has power to engage to transport a passenger to any point on his route.

2. From the reasoning in the preceding paragraph we have seen that the conductor acted within the scope of his authority when he entered into the contract of carriage to transport the plaintiff

from the point at which she boarded the train to the point where he agreed to let her off. In this case we need not be confused by reason of the allegation that fare was paid to the city of Rome under an agreement to let the plaintiff off at the Rome & Decatur crossing, an intermediate point. Under that allegation the plaintiff at least was a passenger until the train reached the intermediate point, the Rome & Decatur crossing. The point at which she was put off was intermediate and before reaching either the Rome & Decatur crossing or the city of Rome. It follows that at the time the plaintiff was put off she was a passenger on the defendant's train, and that the defendant owed her every duty which the law exacts of railroad carriers of passengers. The Civil Code, § 2266, provides: "A carrier of passengers is bound also to extraordinary diligence on behalf of himself and his agents to protect the lives and persons of his passengers. But he is not liable for injuries to the person after having used such diligence." It being without dispute that the plaintiff was a passenger, the case resolves itself down to the proposition as to whether or not the conductor exercised extraordinary care and diligence for the protection of life and person of the plaintiff. The Civil Code, § 2899, declares extraordinary diligence to be "that extreme care and caution which very prudent and thoughtful persons use in securing and preserving their own property." The circumstances under which the plaintiff was put off the train were as follows: Upon boarding the defendant's train, the plaintiff paid to the conductor a cash fare to the city of Rome, but stipulated with the conductor that she should be put off at an intermediate point known as the Rome & Decatur crossing, where the company frequently received and discharged passengers. The declaration alleges that it was in the nighttime, and that the plaintiff was a stranger and could not for herself tell whether she was being put off at the place requested or not; that after going some distance the train stopped, and the conductor, knowing that the train was not at the crossing at which she had requested to get off, came to the plaintiff and represented to her that the train had stopped at the crossing where she desired to leave the train, and assisted her off on to the railroad track, leaving her in the dark, burdened with the care of children and bundles and at a place remote from residences or other places to which she could resort for safety. The plaintiff declares the act

of putting her off under these conditions to be gross and wilful negligence. These allegations are to be taken as true on demurrer, and we are not prepared to hold as a matter of law that the conductor on this occasion, by his conduct just referred to, exercised towards this defendant that "extreme care and caution which very prudent and thoughtful persons use in securing and preserving their own property." This conduct of the conductor related to the very business for which he was employed. In view of the agreement to let the plaintiff off at the Rome & Decatur crossing, the carrier could not have been at fault for letting her off at that point. But conceding that, still it does not follow that he was justified in putting this plaintiff down on the railroad track at the particular place, at the time and under the conditions described in the declaration. His duty of extraordinary diligence to his passenger, under the contract alleged, was to let her off at the place agreed upon. He may not have been obliged to agree to let her off at the intermediate point; but having done so and having undertaken to let her off at the intermediate point, it was at least his duty to give her correct information as to where she was being put off, and certainly it was a violation of that duty to misinform her either wilfully or negligently in respect to the place at which she was being induced to leave the car.

3. From what has been said, it is clear that the defendant is liable to the plaintiff for all elements of damages which legitimately flow from the tort. For the mere invasion of the right, nominal damages, if nothing more, should be allowed. See, in this connection, *Broughton* v. *Winn,* 60 *Ga.* 486; *Chattanooga R. Co.* v. *Lyon,* 89 *Ga.* 23; *City of Greensboro* v. *McGibbony,* 93 *Ga.* 672.

No special damages are alleged, except such as may flow from mere fright. As a general rule, damages for mere fright are not recoverable. See *State Mutual Life Asso.* v. *Baldwin,* 116 *Ga.* 860; *Mabry* v. *City Electric Co.,* Id. 624; *Cole* v. *Atlanta R. Co.,* 102 *Ga.* 478; *Chapman* v. *Telegraph Co.,* 88 *Ga.* 763. There, of course, may be instances where fright may be considered as an element of damages, but they should be restricted to where there is some physical injury attending the cause of the fright, or, in the absence of physical injury, where the fright is of such character as to produce some physical or mental impairment directly and naturally resulting from the wrongful act. Under any other con-

ditions, fright should be regarded as mere emotion, and not suffi- ciently substantive to be the basis of a recovery for damages.   The declaration does not allege any facts which, in this case, would authorize a recovery for fright.   See, also, in this connection, 1 Joyce on Dam. §§ 220, 221.

Are the allegations of the petition sufficient to support a claim for punitive damages? When the circumstances connected with the commission of a tort are such as show wilful misconduct or wantonness, the imposition of such damages is justified.   *Southern. Ry. Co.* v. *O'Bryan,* 119 *Ga.* 147.   The petition avers that the con- ductor knew that the plaintiff was being put off in the nighttime, at a place other than that at which he had agreed he would stop the train for her to alight, and knew that the place was dark and that there were no lights.   This was wilful misconduct on his part. When the plaintiff alleged in substance that while under the care and protection of the defendant, in whom she had a right to rely for information and who was bound to extraordinary diligence for her safety, she was falsely informed by the conductor that she was at the place where she had stipulated to disembark and that the conductor knew the representation to be false at the time he made it, and that she was deceived thereby and induced to leave the train, burdened with the care of children and bundles, at night, in a strange place, and to be left on the railroad track, remote from residences or other places of refuge, there was effectually alleged, upon the part of the conductor acting within the scope of his em- ployment, the perpetration of a positive wrong amounting to wil- ful misconduct, and such as, if true, would support a finding for punitive damages against the defendant.   Inasmuch as there are sufficient allegations in the declaration to support a recovery for nominal as well as punitive damages, it follows that it was erro- neous for the court to dismiss the case upon general demurrer.

Some of the grounds of the special demurrer were well taken, and others were not.   The averments relating to the notice alleged to have been given by the plaintiff to her husband and her expecta- tion in relation thereto should have been stricken.   The averments relating to the acts of the plaintiff and occurrences that transpired after the plaintiff alighted from the train, and her alleged mental distress, and that the conductor could have backed the train from the Rome & Decatur crossing and allowed her to re-embark, which

are objected to in the 3rd ground of the special demurrer, should have been stricken from the petition. In other respects, the special demurrer was not well taken.

<em>Judgment reversed. All the Justices concur.</em>