No. 30,270.

MARY RATLIFFE, *Appellant*, v. THE WESLEY HOSPITAL AND NURSES TRAINING SCHOOL and BLANCHE KESSLER, *Appellees*.

(10 P. 2d 859.)

Opinion filed May 7, 1932.

*George W. Cox, Lawrence Weigand* and *A. Cale Blakely,* all of Wichita, for the appellant.

*W. A. Ayres, Austin M. Cowan, C. A. McCorkle, J. D. Fair, W. A. Kahrs, Arnold C. Todd, James G. Norton, Carl O. Bauman* and *Julian E. Ralston,* all of Wichita, for the appellees.

The opinion of the court was delivered by

SLOAN, J.: This action was one to recover damages for a personal injury received in a hospital. The trial court sustained a demurrer to the plaintiff's evidence, and the plaintiff appeals.

The appellee, the Wesley Hospital and Nurses Training School, is a corporation organized under the laws of Kansas for the purpose of maintaining a benevolent and charitable institution for minister-

ing to the indigent sick and wounded. At the time of the accident complained of it was maintaining a hospital and nurses training school in the city of Wichita. The appellee, Blanche Kessler, was a graduate nurse. The appellant, on the advice of her physician, Dr. H. W. Horn, entered the hospital on February 12, 1929, to undergo a surgical operation. She arranged with the hospital to furnish her a room and all the facilities and equipment necessary for the operation. Doctor Horn was her physician and surgeon, and she employed the appellee, Blanche Kessler, as a special nurse to aid in the operation and care for her while she was confined in the hospital. On February 14, 1929, the appellant was given two hypodermics, prepared and taken to the operating room where the operation was performed. She was returned to her room but did not regain consciousness for three days, when she discovered that she had been severely and seriously burned with hot water. The nurse, Kessler, told her that the string broke on the proctoclysis set and let the hot water fall into the bed.

Doctor Horn directed the nurse to use the proctoclysis known as the Murphy drip. While the operation was in progress a student nurse in the employ of the hospital prepared the room for the return of the appellant. The proctoclysis set was a part of the equipment of the hospital and was assembled and placed at or near the foot of the bed by the student nurse. The proctoclysis set consists of a standard, which is an iron pole sitting on a tripod containing hooks at intervals, and on these hooks, by means of a chain, tape, string or piece of gauze, is hung a can containing hot water and soda solution. From this can a tube extends, which is inserted in the rectum of the patient to whom the proctoclysis is administered. It was necessary to keep the solution hot in order that it would have a body temperature after dropping through the tube and entering the body. After the appellant was returned to the bed the appellee, Kessler, moved the proctoclysis set along the right side of the bed about even with the hips of the appellant. She went to the other side of the bed and was taking the pulse of the patient when the string broke and let the water down into the bed, which resulted in the appellant's injury. The vessel containing the hot water and soda solution was fastened to the standard with a piece of gauze. There was evidence to the effect that the equipment was standard and that it was not unusual for the vessel holding the water to be fastened to the standard by gauze, string or other bandage, although a part of the vessels were equipped with chains.

The trial court sustained a demurrer to the evidence, holding that the hospital was a charitable institution and not liable for the negligence of its employees, and that the evidence did not show negligence on the part of the appellee Kessler. This is assigned as error and is here for review.

It is established by appellant's evidence that the appellee hospital was a charitable institution organized and maintained for the purpose of ministering to the indigent sick and wounded. It is contended, however, that there is evidence sufficient to take it out of the established rule of this jurisdiction that a charitable institution is not liable for the negligence of its physicians, attendants and employees resulting in injuries to its patients. (*Nicholson v. Hospital Association,* 97 Kan. 480, 155 Pac. 920; *Davin v. Benevolent Association,* 103 Kan. 48, 172 Pac. 1002; *Webb v. Vought,* 127 Kan. 799, 275 Pac. 170.)

It is alleged in the petition that the appellee failed to exercise reasonable care in the selection and employment of its nurses and attendants. The evidence was that the superintendent had had no medical training of any kind prior to his appointment as superintendent of the hospital. The evidence does not show, however, that the superintendent had anything to do with the care of patients or the preparation of the equipment. He appears to have been the executive head of the hospital and as such had general supervision over the institution. The physicians and surgeons were apparently selected by the patients. Experienced graduate nurses had direct supervision over the student nurses, and the equipment of the hospital was standard equipment of the kind and character usually found in such institutions. It might, of course, be desirable to have a trained physician for the executive of any hospital, but such person may be wholly lacking in executive ability. The successful operation of a hospital, like any other business, must necessarily depend upon the ability of the superintendent to organize and maintain the institution in accordance with recognized standards. Technical advice and service may be employed. In this case the surgeon and the nurse were of the appellant's own choosing. This does not show a lack of due care on the part of the hospital in the employment of its agents and servants, and this case is not distinguishable from the cases cited and is controlled by them. We have reviewed the authorities cited in appellant's brief from other jurisdictions where a different rule has been adopted with reference to the lia-

bility of charitable institutions, but we find nothing therein warranting this court in overruling or modifying the rule established in the cases cited, and it is adhered to. We hold that the court properly sustained the demurrer on the part of the appellee hospital.

The ruling on the demurrer of the appellee Kessler, the nurse, presents in some respects a more difficult question. The appellee was the employee of the appellant, acting under orders of appellant's doctor in the use of the facilities furnished by the hospital. She had nothing to do with the selection of the equipment. The room to be occupied by the appellant was arranged and equipped while the operation was being performed, in which the appellee assisted. She returned to the room with her patient and found it equipped with a proctoclysis set filled with a solution to administer the proctoclysis to her patient in accordance with the instructions of the attending physician. The proctoclysis set stood at or near the foot of the bed. The water container was fastened to the standard with a gauze string. This appears to be a common practice, not only in this hospital but in others as well, and could not under the circumstances of this case have been a patent defect of which the nurse was bound to take notice. The nurse and her patient were in the room alone. She removed the proctoclysis set to the side of the bed about even with the hips of her patient. There is no evidence tending to show that this was not a proper thing to do. The length of the hose carrying the solution from the container to the body of the patient is not established. While the nurse was taking the pulse of the patient the string broke, the water spilled in the bed and severely scalded the appellant.

The appellant earnestly insists that the doctrine of *res ipsa loquitur* applies and that the court was bound to presume from these facts that the appellee was negligent.

*Res ipsa loquitur*, strictly speaking, requires for its application nothing more than the accident itself, an instrumentality within the control of the defendant, and a physical cause which, according to common experience, does not ordinarily occur in the absence of a breach of duty. It is not evidence of negligence and rests essentially on the absence of direct evidence of the defendant's negligence. Hence the inference arising under the doctrine is overcome when there is evidence of specific acts of negligence, and has no force in the presence of direct evidence. It applies in the absence of testi-

mony but is of no avail in the presence of testimony. (45 C. J. pp. 1199, 1206; Annotation 59 A. L. R. 468.)

It is alleged in the petition and contended that the evidence warrants the conclusion that the appellee hospital furnished defective and worn-out equipment to be used in the care of the appellant. The accident happened because of the failure of the equipment furnished by the hospital to sustain the water container. There is direct testimony on this question and it may be accepted as an established fact. There is no evidence of any intervening cause affecting the gauze string which held the container to the standard. The established facts take the case out of any general presumption or inference of negligence which would place the burden of explanation upon the appellee and reduces the issue to the failure of the appellee to carefully examine the equipment before using it in the care of the appellant. Was the appellee bound to examine the equipment for latent defects? We think not. The hospital and equipment was of the appellant's own choosing. The appellee was the employee of the appellant to use the facilities and equipment furnished and she had the right to believe and act upon the theory that the equipment was safe and adequate to perform the service for which it was intended. The evidence is to the effect that the equipment was standard, and there were no patent defects in the proctoclysis set of which the appellee was bound to take notice. It was furnished to her apparently ready for use and it was not her duty to examine into the intricate parts for latent defects. The evidence does not show that the appellee was guilty of negligence, and the court properly sustained the demurrer.

A motion for a new trial was filed after the ruling of the court on the demurrer, and on the hearing of the motion the appellant introduced what she claimed was newly discovered evidence. The newly discovered evidence was from witnesses who testified at the trial. The trial court found that there was a lack of diligence and that it could not consider the newly discovered evidence. As a general rule newly discovered evidence cannot be presented by means of witnesses who testified at the original trial, unless there are unusual circumstances, which do not exist here. (*Dunham v. Bokel,* 105 Kan. 369, 184 Pac. 636.)

The judgment is affirmed.