## LOUIS N. BUTLER v. NORTHWESTERN HOSPITAL OF MINNEAPOLIS.[1]

February 25, 1938.

No. 31,485.

[1]Reported in 278 N. W. 37.

*Cobb, Hoke, Benson, Krause & Faegre* and *Frank Janes,* for appellant.

*Jay W. Smith* and *T. M. Thomson,* for respondent.

JULIUS J. OLSON, JUSTICE.

Plaintiff prevailed in his action to recover damages for injuries sustained from hot-water burns. Defendant's motion in the alternative for judgment notwithstanding or a new trial was denied, and it appeals.

November 2, 1935, plaintiff, 74 years of age, underwent an appendicitis operation at defendant hospital. That afternoon, while plaintiff was undergoing the operation, arrangements were made in his behalf for a special nurse to attend him after the operation. Following the usual practice, the hospital notified the nurses' central registering bureau (an organization which keeps a list of registered nurses and furnishes such when requested by hospitals) and procured the professional services of Mrs. Nordgren, a duly registered nurse and an alumnus of defendant's Hospital Training School. She reported for duty about 6:15. Plaintiff was brought from the operating room shortly thereafter. In the meantime, she had learned from the anesthetist that the operating surgeon wanted plaintiff to be given a "tap water" proctoclysis. That is a method by which a solution is introduced into the body drop by drop through the rectum for nourishment. The "tap water" wanted and ordered was plain water heated to 120 degrees Fahrenheit. Equipment necessary for a proctoclysis consists of a container, a standard or stand which supports the container above the level of the bed, a rubber tube, a Murphy Drip, which is a glass coupling used to enable the nurse to count the drip flow, a catheter (i. e., a rectal tube), and a screw clamp placed on the rubber tubing to regulate the flow. The equipment provided for and placed in plaintiff's room consisted of a container, a rubber rectal tube, and a spring clamp. These were among a collection of articles in a tray on the table. Mrs. Nordgren secured a standard and attempted to construct out of these articles the apparatus for proctoclysis. She filled the can with hot water and hitched it to the standard. Realizing then that the equipment was inadequate, she placed the end of the rubber tubing on the bed and went out to secure the other necessary articles. Before leaving plaintiff's bedside she fastened the spring clamp on the tubing to prevent any flow. In her absence the clamp

came apart, allowing the hot water to drain from the container through the rubber tubing and onto plaintiff's bed (provided with a rubber sheet) so that his back and thighs were severely scalded. Because of a spinal anesthetic, plaintiff was insensitive from the waist down. He did not realize what happened other than that he was warm.

Plaintiff seeks to hold defendant liable on the theory that it furnished a defective spring clamp, which, because of its defective condition, caused plaintiff's injury. That is the determinative issue here. Any question of Mrs. Nordgren's agency was foreclosed by the court's charge that "the defendant cannot be held liable for any act or omission of the special nurse, Susanna Nordgren." That is the law of the case; hence the nurse must be considered as plaintiff's agent or servant. Defendant's liability, if any, must rest entirely upon the claimed breach of duty in failing to furnish an efficient clamp, and that such failure proximately resulted in plaintiff's injuries.

■ It is well established that one who furnishes an instrumentality for a special use or service impliedly warrants the article furnished to be reasonably fit and suitable for the purpose for which it is expressly let out, or for which, from its character, he must be aware it is intended to be used, 12 A. L. R. p. 774; 8 C. J. S. p. 258, § 25, and is liable to the bailee or third persons for injuries proximately resulting from any defect due to his want of due care. Dunnell, Minn. Dig. (1937 Supp.) § 731d; 8 C. J. S. p. 318, § 40.

■ Assuming, as we must, that the nurse was plaintiff's agent or servant, it follows that the involved clamp and other articles present in plaintiff's room were furnished by defendant to be used for customarily needed purposes where an important surgical operation has been performed. That obviously was the intention. And the articles so selected by defendant had to be reasonably fit therefor. Defendant's argument that "the clamp was not furnished by the hospital for use in treatment of the plaintiff" is unavailing. It is not enough to say that the purpose of the articles in the room was "unknown and unexplained." The arrangement with the hospital could mean nothing less than the furnishing of necessary

facilities and equipment for the efficient operation of its business. And these must necessarily be furnished for the particular purpose for which they are needed and designed.

■ It is strongly urged that this equipment, among which was the defective spring clamp, was not furnished for use in proctoclysis. The effect of that argument is that since the use made was other than that intended, injuries arising therefrom are not attributable to any fault of defendant. With that we cannot agree. It is true, as appears from the record, that that kind of clamp is ordinarily utilized in the administration of an enema where the purpose is to allow either a full flow of the solution or to cut it off altogether. A spring clamp is ideally adapted to that purpose. On the other hand, in proctoclysis the solution is injected drop by drop, a result which can be had only by the use of a screw clamp which can be adjusted to increase or decrease the flow or shut it off completely. But the important thing as regards the intended use of the clamp is not the general treatment that is given, but rather, and only, the particular function of the clamp in any treatment, *i. e.*, its general use, which is to shut off liquid flow through rubber tubing. Our thought is best expressed in the very words of defendant's counsel:

"Our attention here is directed at one small item of that equipment, a single clamp which is used to shut off the stream of flow through rubber tubing. It is common knowledge that rubber tubing is used about a hospital for a number of purposes not necessarily limited to the treatment of patients. The use of the type of clamp involved is not restricted to hospitals. The same clamps are often used in homes, industry and laboratories, in fact, wherever rubber tubing is used."

It would seem, therefore, that defendant should be held to be aware of the obvious nature of its use, which is the stoppage of the flow of a solution through a rubber tube conduit. And that is so irrespective of the particular treatment being given. From this it follows also that defendant may be held liable for injuries proximately resulting from the defective condition of the clamp of which

it had or with reasonable care could have acquired knowledge. Baker v. Board of Trustees, 133 Cal. App. 243, 248, 23 P. (2d) 1071. . There is sufficient sustaining evidence to show that the clamp was discoverably defective. It consists of two parts, the body or base and the lever above. The nurse, her brother, and husband testified that the two sides of the body of the clamp, each containing one hole through which the ends of the lever were inserted for attachment, had come apart, releasing the lever and the tongue or clamping part from the base or body part of the clamp. The effect of the verdict in plaintiff's behalf establishes defendant's negligence. From the evidence we are not prepared to say, as a matter of law, that defendant could not readily have discovered this defect if a reasonable inspection thereof had been made.

■ There is intimation by defendant that the injury was caused by the negligent conduct of the nurse. Her negligence, if any, can be considered only in relation to the defective clamp. No other is material. It was upon that theory that the case was submitted to the jury and so is to be determined here. The jury's verdict resolves that issue in favor of plaintiff, and we cannot, as matter of law, hold it otherwise. Mrs. Nordgren, although a trained professional, could reasonably rely upon the hospital's furnishing a proper clamp. We agree with defendant that if the article furnished was obviously unfit for the use for which it was furnished and intended and the nurse used it in violation of the usual standards of due care of nursing practice, the defendant cannot be chargeable with any injurious effects therefrom. Payne v. Santa Barbara Cottage Hospital, 2 Cal. App. (2d) 270, 37 P. (2d) 1061. But the defect was not patent. The clamp was furnished apparently ready for use, and it was not her duty to examine into its mechanical parts for the discovery of possible defects. Ratliffe v. Wesley Hospital, 135 Kan. 306, 310, 10 P. (2d) 859. The defect was not discovered until she returned from her effort to get the missing proctoclysis equipment, and she then found it apart.

■ Proximate cause is oftentimes a difficult problem to solve. An interesting and instructive article on that subject is found in 21 Minn. L. Rev. p. 19. The author of the article, Professor Wil-

liam L. Prosser of the University Law School, at p. 22, has this to say with respect to "causation":

"As a practical matter, legal responsibility must be limited to those causes which are so close to the result, or of such significance as causes, that the law is justified in imposing liability. This limitation is not a matter of causation, it is one of policy; and the attempt to state it in terms of causation can lead to nothing but confusion."

In the instant case we think there can be no serious question but that defendant's negligence "as a practical matter" was so close to plaintiff's harm as to justify the jury in finding liability. Was, then, the negligence, if such there be, on the part of the nurse a sufficient intervening cause to compel the triers of fact to relieve defendant of that responsibility?

■ "Intervening forces introduce a further problem, as to whether defendant is to be relieved from liability for an injury to which he has in fact contributed, by a superseding cause for which he is not responsible. 'Intervening force' is a term easier of comprehension than of exact definition. An intervening force is one which comes into active operation in producing the result, *after* the defendant's negligence. 'Intervening' is used in a time sense; it refers to later events. Conditions existing and forces already in operation at the time of defendant's conduct are not included within the term." (*Id.*, p. 37.)

This court in Reichert v. Minnesota Northern Natural Gas Co. 195 Minn. 387, 392, 263 N. W. 297, held defendant to responsibility because it had negligently left an empty paint drum with undrained portions of its contents therein. The contents were of a type capable of generating explosive gas. Plaintiff, a ten-year old boy, retrieved the drum and sought to cut out the head of it with a chisel. There was an explosion and resulting injury to the boy. A verdict for plaintiff was sustained, because if defendant's "act was negligent, the injury to young Reichert followed in an unbroken natural sequence in the ordinary and natural course of events and without

an intervening efficient cause. Leaving the drum in the condition described was a substantial factor in causing the injury." This perhaps is the furthest this court has ever gone on this phase. We certainly went much further there to sustain liability than is necessary here to sustain plaintiff's recovery. To the same effect is Ferraro v. Taylor, 197 Minn. 5, 265 N. W. 829. And in Bibb Broom Corn Co. v. Atchison, T. & S. F. Ry. Co. 94 Minn. 269, 275, 276, 102 N. W. 709, 712, 69 L. R. A. 509, 110 A. S. R. 361, 3 Ann. Cas. 450, it is said:

"If, but for his [defendant's] negligence, the loss would not have occurred, no sound reason will excuse him, and he should not be relieved by an application of the abstract principles of the law of proximate cause. No wrongdoer should be allowed to apportion or qualify his own wrong; and, if a loss occurs while his wrongful act is in operation and force, and which is attributable thereto, he should be held liable."

In Moehlenbrock v. Parke, Davis & Co. 141 Minn. 154, 156, 169 N. W. 541, 542, defendant drug company had furnished impure ether. In administering it the doctors were negligent. The patient was killed. Liability was sustained because, as summarized in headnote 9, "the negligence of the surgeons operating cannot be imputed to the patient, so as to relieve a third party whose negligent act has contributed to the patient's injury. Nor is the patient as to such third party engaged in a joint enterprise with the surgeons." Nor is it "due care to depend upon the exercise of care by another when such reliance is accompanied by obvious danger." Dragotis v. Kennedy, 190 Minn. 128, 130, 250 N. W. 804, 805.

■ The verdict is assailed as excessive. The amount is $5,140, of which $640 represents special damages in the way of hospital care and medical treatment, thus leaving the general verdict $4,500. Plaintiff's burns were extremely painful. He suffered genuine torment. True, he is getting along in years and perhaps has not much time left during which he must bear this suffering. But we are not persuaded that the verdict can be assailed upon this ground. His remaining days, that should be for him, as for all normal persons,

the eventide of life's happiest moments, he must now endure in pain.

The order is affirmed.

MR. JUSTICE STONE, because of illness, took no part in the consideration or decision of this case.

