### 26774. GARDNER *v.* NEWNAN HOSPITAL.

DECIDED JUNE 28, 1938.

*Stanford Arnold, Howell & Post,* for plaintiff.

*Garland M. Jones, H. A. Hall, R. O. Jones, W. Y. Atkinson,* for defendant.

BROYLES, C. J. The sole question for determination in this case is whether the court erred in sustaining a general demurrer to the

petition as amended, which substantially alleges that Newnan Hospital, the defendant, injured and damaged Mrs. Ruth M. Gardner in the sum of $50,000; that on July 22, 1935, plaintiff entered said hospital to undergo an operation for "an abscessed fistula in ano;" that said hospital was operated for pecuniary gain, and plaintiff was a pay-patient therein; that the operation "consisted in the making of an incision at the abscess locality, cleaning out the tract, packing same, and stitching same up;" that the "operation was entirely successful, and petitioner would, after a reasonably short time, have recovered entirely" therefrom and "would not have had said abscessed fistula or any recurrence thereof;" that about three days after the operation, at a time when plaintiff was confined to her bed in said hospital and "was not permitted to move herself . . for any purpose," and "defendant and its agents . . knew that any shock or loud noise would cause petitioner to jump and seriously hurt herself," Miss Mary Lee, the superintendent of the hospital, placed in said room an electric fan belonging to the defendant, which was about seven years old and very noisy when in operation; that all the nuts and bolts in the fan and all its moving parts were loose, and the nuts and bolts holding the "four-blade fan of diameter of approximately one foot" to the motor were loose, and "the fan had been . . stored during the winter months, and had not been worked over or oiled since such storage;" that "all of the above facts were known to defendant corporation by and through its agent Miss Lee;" that the fan was put on a table in plaintiff's room, despite her insistence that "she did not want it placed there and that the fan was old and made a lot of noise and would interfere with petitioner's rest;" that "at the time of placing said fan in said room, Miss Lee stated that she was hot and tired, and she turned the fan on so that she, Miss Lee, could cool off;" that about an hour and a half or two hours after the fan was left running in the room, it "flew to pieces and exploded and various parts thereof fell apart, and same fell upon the floor, all of this making a loud noise and explosion;" that plaintiff "was nervous, and said noise and explosion severely shocked and frightened" her, "and made her jump in the bed where she was lying, she jumping up and straining her muscles involuntarily as a result of said shock and fright;" that "said shock and fright and said jumping were the sole, direct,

and proximate results of the negligence of defendant, (a) in placing in petitioner's room, when she was in a dangerous condition and could not be disturbed, said fan at a time when said fan was in danger of exploding and coming to pieces; (b) in placing said fan in the room of petitioner at a time when petitioner was in a critical condition and could not stand a shock, and placing in operation in said room a fan which was obviously dangerous and likely to explode and shock and frighten petitioner; (c) in not taking proper care . . to determine whether . . said fan . . was likely to explode or fall to pieces and shock petitioner;" that, as the sole, direct, and proximate result of said negligence, the "stitches holding said operation and the flesh and tissue of petitioner were pulled out, which opened the incision and created an avenue for infection;" that "on account of the bowel movements, said place was particularly dangerous in connection with infection, and same did become badly infected within a few days;" that "petitioner's wound from said operation was still fresh and raw, and same had just received additional injuries as described . . , and petitioner . . was sick and confined to bed, all of which made it impossible for any further stitches, operations or treatments to be given her at said time;" that said area has not healed, and "has continued to drain and now drains pus and blood;" that "a semi-hard mass of tissue now protrudes from the anus . . as a result of the tearing of said stitches and . . negligence," and "same is and has been excruciatingly painful . . to petitioner;" that "same has brought about a focal infection involving her kidneys and Bright's disease, and causing excruciating pain in her back, and weakening and undermining her entire health and system;" that "a second fistula has now formed, caused by the infection resulting from said negligence;" that in March, 1937, "petitioner had several hemorrhages of pus and blood," as a result of said negligence and infection, and nearly died from loss of blood; that "pus and blood do now drain daily from said area . . as a result of said negligence and infection;" that as a result of said negligence the plaintiff was confined in the Newnan Hospital for about two weeks after said "explosion," was also confined in said hospital for a week beginning March 5, 1937, and "was confined in the Georgia Baptist Hospital . . on account of a subsequent operation upon said injured por-

tions for approximately two weeks, beginning . . at the last of June, 1937;" that "she has been and is and will continue to be very much weakened as a result of said injury, and . . has headaches, backaches, kidney pains, and an impairment of her eyesight;" that another operation is necessary to give plaintiff some relief from the conditions herein stated, but said operation "will result in the severance of the whole anal muscle, with possible loss of bowel control, which would make petitioner a permanent invalid;" that she "suffered a severe and lasting and permanent nervous shock, and she is and has been and will continue to be highly nervous and in a condition of nervous shock as a result of said injuries and of said negligence;" and that "as a result of said injuries" the plaintiff incurred a loss of $1800 which she was earning annually in conducting a private, independent business, which she had to close up as the result of her said injuries.

"Relatively to the law of pleading, a cause of action is some particular legal duty of the defendant to the plaintiff, together with some definite breach of that duty which occasions loss or damage." *Ellison* v. *Ga. R. Co.*, 87 *Ga.* 691, 699 (13 S. E. 809). A hospital conducted for private gain owes its patients the duty of exercising in their behalf "such reasonable care and attention for their safety as their mental and physical condition if known may require." 13 R. C. L., 949, § 13, and notes. See also 22 A. L. R. 343, for cases sustaining the above general rule. In *Emory University* v. *Shadburn*, 47 *Ga. App.* 643 (171 S. E. 192), the rule was stated as follows: "A private hospital in which patients are placed for treatment by their physicians, and which undertakes to care for the patients and supervise and look after them, is under the duty to exercise such reasonable care in looking after and protecting a patient as the patient's condition, which is known to the hospital through its agents and servants charged with the duty of looking after and supervising the patient, may require. This duty extends to safeguarding and protecting the patient from any known or reasonably apprehended danger from himself which may be due to his mental incapacity, and to use ordinary and reasonable care to prevent it." In the instant case the petition describes the operation, the condition of the plaintiff, and the manifold defects in the electric fan, and avers that "all the above facts were known to defendant . . by and through

its said agent, Miss Lee." It further alleges that "the defendant and its agents knew that any shock or loud noise would cause petitioner to jump and seriously hurt herself;" and that as "the sole, direct, and proximate result of defendant's . . negligence" the sewing and stitches holding said operation and the flesh and tissue were pulled out. We are satisfied that the petition does substantially allege that the plaintiff suffered physical injuries as the proximate result of the defendant's negligence. We do not understand that it is the law of Georgia that there can be no recovery of damages for fright resulting from ordinary negligence, where such fright directly and immediately causes physical injury. In *Candler* v. *Smith,* 50 *Ga. App.* 667, 673 (179 S. E. 395), the court said: "As a general rule, damages for mere fright are not recoverable; but they may be recovered where there is some physical injury attending the cause of the fright, or, in the absence of physical injury, where the fright is of such character as to produce some physical or mental impairment directly and naturally resulting from the wrongful act. *Williamson* v. *Central Ry. Co.,* 127 *Ga.* 125 (3), 131 (56 S. E. 119). Mere wrongful acts of negligence will authorize a recovery where the resulting fright, shock, or mental suffering is attended with actual immediate physical injury, or where from the nature of the fright or mental suffering there naturally follows as a direct consequence physical or mental impairment. *Hines* v. *Evans,* 25 *Ga. App.* 829 (105 S. E. 59); *Pettell* v. *Thompson,* 33 *Ga. App.* 240 (125 S. E. 779); *Cooper* v. *Meaders,* 47 *Ga. App.* 89, [90] (169 S. E. 685). In either of such events the fright or mental suffering can itself be considered, together with the accompanying physical injury or resulting physical impairment, as an element of damage. *Atlanta Hub Co.* v. *Jones,* 47 *Ga. App.* 778, 780 (171 S. E. 470)." In the leading case of *Williamson* v. *Central of Georgia Ry. Co.,* supra, Justice Atkinson, speaking for a united court, said: "As a general rule, damages for mere fright are not recoverable. . . There, of course, may be instances where fright may be considered as an element of damages, but they should be restricted *to where there is some physical injury attending the cause of the fright, or, in the absence of physical injury, where the fright is of such character as to produce some physical or mental impairment directly and naturally resulting from the wrongful act."* (Italics

ours.) After quoting the above language of the *Williamson* case, and italicizing it just as we have done, this court, in *Hines v. Evans,* supra, said: "It is not our understanding of the rule adopted in this State that wilfulness or wantonness is a necessary element of negligence in order to enable one to recover damages either where the fright is accompanied with actual physical injury or where it is followed by physical or mental impairment as a direct, natural, and probable consequence. . . We are therefore unable to follow in their entirety the pronouncements made by this court in the case referred to [*Goddard* v. *Watters,* 14 *Ga. App.* 722 (82 S. E. 304)], although in most respects the law as there laid down is clearly and aptly stated." See, in this connection, *Atlanta Hub Co.* v. *Jones,* supra.

The *Goddard* case, supra, which is strongly relied on by counsel for the defendant, was one where the plaintiff sought to recover damages for nervous shock and premature childbirth resulting from an attack made on her husband by Watters, and where there was no *contemporaneous* injury. In the instant case the fright was attended with immediate physical injury; and, too, physical impairment which directly and naturally resulted from the fright. In *Pettett* v. *Thompson,* supra, this court held that "even for mere negligence, if the fright, shock, or mental suffering results naturally in mental or physical impairment, that is to say, if the knowledge of the defendant was or should have been such that the resulting injury could under the circumstances have been reasonably foreseen and anticipated as the direct, natural, and probable consequence of his act, a recovery against him may be had, and in such a case the original fright, shock, or mental suffering can also be considered as an element of damage. *Chapman* v. *Western Union Tel. Co.,* 88 *Ga.* 763 (15 S. E. 901, 17 L. R. A. 430, 30 Am. St. R. 183) ; *Goddard* v. *Watters,* 14 *Ga. App.* 722 (82 S. E. 304) ; *Charleston & Western Carolina Ry. Co.* v. *Hart,* 23 *Ga. App.* 161 (97 S. E. 866)." In the recent case of *Noth* v. *Davis,* 57 *Ga. App.* 611 (196 S. E. 214), the petition substantially alleged that the defendant entered the plaintiff's room, where she was confined with a female trouble, and with knowledge of her condition, in her presence, with his right hand in his pocket, abused plaintiff's husband in a violent manner, called plaintiff and her husband liars, led plaintiff to believe that he was going to shoot her husband, and

by his conduct caused plaintiff to receive physical injuries consisting of shock to her nervous system, and causing her to fall on the floor, and to become stricken with jerking and twitching, which caused her to suffer both physical and mental agony. The court held: "The petition set forth a cause of action for wanton and wilful conduct, *and for simple negligence.*" (Italics ours.) In support of this ruling the court cited *Atlanta Hub Co.* v. *Jones, Candler* v. *Smith, Hines* v. *Evans,* supra; *Interstate Life & Accident Co.* v. *Brewer,* 56 *Ga. App.* 599 (193 S. E. 458); *Brewer* v. *Interstate Life & Accident Co.,* 56 *Ga. App.* 720 (193 S. E. 909); *Jewel Tea Co.* v. *Rowling,* 57 *Ga. App.* 116 (194 S. E. 393). In the case last cited, Rowling brought an action in damages against the tea company, to recover for the loss of his wife's services. The petition alleged that while his wife, who was recuperating from a serious operation, was sitting in a swing on her porch, the defendant's agent, who had knowledge of her condition, came upon the porch and endeavored to sell her some of the defendant's goods; that when she declined to make any purchase, the agent shook his fist before her face; that she, fearing that she was going to be struck by the agent, jumped up and ran into the house; that in getting out of the swing the "stitches in her recent incision were torn loose, and the wound was ripped open internally, as a result of which she suffered . . excruciating physical pain as well as mental agony;" that the impairment of her health is permanent; and that the agent was acting within the scope of his employment and in the prosecution of the defendant's business. This court held that the petition set out a cause of action and was not subject to the demurrers, general and special. In the instant case, while possibly some of the parts of the petition may have been subject to special demurrer, the petition as a whole set out a cause of action. The court erred in dismissing it on general demurrer.

*Judgment reversed. MacIntyre and Guerry, JJ., concur.*