180 So.2d 904

**SOUTH HIGHLANDS INFIRMARY**

**v.**

Laura **CAMP.**

**6 Div. 841.**

Supreme Court of Alabama.

Nov. 4, 1965.

Rehearing Denied Dec. 16, 1965.

2

David J. Vann, Hobart A. McWhorter, Jr., and White, Bradley, Arant, All & Rose, Birmingham, for appellant.

Rogers, Howard, Redden & Mills, Birmingham, for appellee.

**LAWSON, Justice.**

This is a personal injury action brought in the Circuit Court of Jefferson County by Mrs. Laura Camp against South Highlands Infirmary, a corporation.

In her complaint Mrs. Camp alleged that the Infirmary "negligently caused or allowed to be used a machine for the cutting of skin from the plaintiff's body for the purposes of grafting which machine the defendants knew ·or in the regular and ordinary course of business should have known, was not in good operating condition and as a proximate consequence of said negligence plaintiff was greatly injured and damaged on her body, in that deep cuts were made in one of her limbs resulting in great pain and mental anguish, permanent scarring and damage to the plaintiff's limb, etc."

The Infirmary pleaded the general issue in short by consent in the usual form.

There was a jury verdict in favor of Mrs. Camp in the amount of $10,000. Judgment followed the verdict. The Infirmary's motion for a new trial having been overruled, it has appealed to this court.

The facts summarized in the next paragraph are without dispute.

Mrs. Camp was admitted to the operating room of the Infirmary for a skin grafting operation. She had employed a surgeon to perform the operation, the purpose of which was to remove a patch of skin from the front of her right thigh (the "donor" site) to be grafted over an area on the calf of her right leg where she had previously sustained electrical burns. After Mrs. Camp was anesthetized, the surgeon proceeded to remove a strip of skin from the donor site, using a Stryker Dermatome, a kind and type of electrical surgical instrument used in removing skin for grafting, which instrument was tendered to the surgeon by the Infirmary for use cn Mrs. Camp. The surgeon proceeded to remove a patch of skin from Mrs. Camp's thigh, which patch of skin was too thick for use. Upon observing that the removed skin was too thick, the surgeon re-set the gauge on the dermatome and proceeded to remove another patch of skin from Mrs. Camp's thigh. When it also proved to be too thick to use for the desired grafting, the surgeon decided not to undertake to remove any more skin from the donor site. The patches of skin which had been removed were sutured back on the thigh of Mrs. Camp. Two significant, permanent scar

areas developed at the two places on Mrs. Camp's thigh where the patches of skin were removed and then replaced.

The Infirmary contends that the trial court erred in refusing to give at its request affirmative instructions which it duly requested in writing. The reasons why it was entitled to have such instructions given are stated in the Infirmary's brief as follows:

"The complaint charges the defendant [Infirmary] with negligently providing a skin grafting instrument which defendant actually or constructively knew to be defective when furnished for use on the plaintiff. Appellant maintains that such was not established—that there was no evidence (1) that the Stryker Dermatome was defective at the time it was furnished to plaintiff's doctor, at his request, for use in plaintiff's operation, or (2) if there was any defect in the instrument at the time of delivery to plaintiff's doctor, that defendant's agents had actual knowledge either of such defect or of any fact that would charge it with constructive knowledge of such defect."

The first reason asserted by the Infirmary in support of its contention that the trial court erred in refusing its affirmative instructions clearly presents only a question of fact. In considering this contention, we must review the tendencies of the evidence in the light most favorable to the appellee, plaintiff below, without regard to any view we may have as to the weight of the evidence; and must allow such reasonable inferences as the jury was free to draw, not inferences which we think the more probable. W. S. Fowler Rental Equipment Co. v. Skipper, 276 Ala. 593, 165 So.2d 375, and cases cited; Mobile Cab & Baggage Co. v. Busby, 277 Ala. 292, 169 So.2d 314.

The surgeon who performed the operation on Mrs. Camp was called by her as a witness. On direct examination he said that when he entered the operating room he was provided by the Infirmary with a Stryker Dermatome, a standard surgical instrument used by surgeons in the removal of skin grafts. He made a visual inspection of the dermatome and approved it for use in the operation. There is no evidence that he examined the dermatome for latent defects. But within ten seconds after the operation he made a further examination of the dermatome and found it to be defective in that a spring which was designed to keep the front roller rigid was bent to such an extent that it would not perform that function. He did not drop the dermatome after it came into his possession or apply sufficient pressure to it during the operation as to bend the spring. He expressed the opinion that the dermatome was in a defective condition when he entered the operating room. On cross-examination the surgeon admitted that he had been mistaken on his direct testimony in explaining how the Stryker Dermatome works and said that the opinion which he expressed on direct that the dermatome was defective when he entered the operating room was based on the assumption that it operated in the manner described by him during his direct examination. But on redirect examination the surgeon again said that the rollers on a Stryker Dermatome in good working condition should be rigid and he had previously stated that the rollers on the dermatome which he used were not rigid. The springs had undue play in them. As a result of those defects the opening between the blade and the roller was increased, thereby increasing the depth of the skin which was removed.

The dermatome used in the operation was admitted in evidence and was examined by the surgeon. He said that it was then in substantially the same condition as it was immediately after the operation.

Shortly after the operation, within a day or two, the surgeon carried the dermatome to the Infirmary's Administrator, who sent it to the manufacturer for

examination. The manufacturer's general manager later wrote a letter to the Infirmary in care of the Administrator, wherein he advised in part as follows: "After inspecting dermatome #426RD, I would say that the dermatome is now defective. The two springs which help hold the depth setting adjustment have been bent beyond usefulness."

There was evidence which would have justified the jury in finding that the unfortunate result of the operation was due at least in part to the unfamiliarity of the surgeon with the Stryker Dermatome.

■ But the evidence which we have set out above was, in our opinion, sufficient to take to the jury the question as to whether the dermatome was defective at the time it was furnished by the Infirmary to the surgeon for use in the operation on Mrs. Camp. In this state, unlike in some others, there need be only a scintilla of evidence to require reference of an issue of fact to the jury. If there is "a mere 'gleam,' 'glimmer,' 'spark,' 'the least particle,' 'the smallest trace'—'a scintilla' " afforded from the evidence to sustain the issue, the trial court is duty bound to submit the question to the jury. Barber v. Stephenson, 260 Ala. 151, 69 So.2d 251; Boggs v. Turner, 277 Ala. 157, 168 So.2d 1.

We come now to consider the second reason why the Infirmary says that the trial court erred in refusing the affirmative instructions which it requested. It says, in effect, that there was no evidence that the Infirmary's agents had actual or constructive knowledge of any defect in the dermatome, if there was a defect.

There was no evidence to show actual knowledge of the defect by any agent, servant or employee of the Infirmary.

When the Infirmary says that there was no evidence of any fact that would charge it with constructive knowledge, we assume it is saying that Mrs. Camp did not prove the averment of her complaint to the effect that the Infirmary in the regular and ordinary course of its business should have known of the defect which the complaint alleged to have existed in the "machine," the dermatome. The dermatome was not examined before it was tendered to the surgeon for use in the operation on Mrs. Camp. The effect of the Infirmary's argument, as we understand it, is that there was no duty upon the Infirmary to examine the dermatome for defects before making it available to the surgeon.

■ The general rule seems to be that the equipment furnished by a private hospital for a patient's use should be reasonably fit for the uses and purposes intended under the circumstances, and where a hospital furnishes defective equipment to a patient who, because of such defective equipment suffers injury proximately resulting therefrom, liability can be imposed as for negligence. Butler v. Northwestern Hospital of Minneapolis, 202 Minn. 282, 278 N.W. 37; Baker v. Board of Trustees of Leland Stanford Junior University, 133 Cal.App. 243, 23 P.2d 1071; Woodhouse v. Knickerbocker Hospital, Sup., 39 N.Y.S.2d 671, aff'd 266 App.Div. 839, 43 N.Y.S.2d 518; Holtfoth v. Rochester General Hospital, 304 N.Y. 27, 105 N.E.2d 610; Medical & Surgical Memorial Hospital v. Cauthorn (Ct. of Civ.App. of Tex.), 229 S.W.2d 932; Hord v. National Homeopathic Hospital, D.C., 102 F.Supp. 792; Delling v. Lake View Hospital Ass'n, etc., 310 Ill.App. 155, 33 N.E.2d 915; Gardner v. Newman Hospital, 58 Ga.App. 104, 198 S.E. 122. See Diermon v. Providence Hospital, 31 Cal. 2d 290, 188 P.2d 12; 41 C.J.S. Hospitals § 8, p. 344.

■ In this case, as in some of those cited above, the surgical instrument was not furnished directly to the patient, but to another employed by the patient, to be used in the treatment of the patient. If the defect in the dermatome had been a patent one, a different question would have been presented. Robinson v. Crotwell, 175 Ala. 194, 57 So. 23; Payne v. Santa Barbara

Cottage Hospital, 2 Cal.App.2d 270, 37 P.2d 1061. But the defect was latent, and evidence adduced from a surgeon who testified on behalf of the Infirmary shows that it is not standard practice for a surgeon, before performing an operation with a surgical instrument, to dismantle the instrument or machine to look for defects. That witness said that it is the standard practice for surgeons to accept as suitable for use the surgical instruments and machines that are furnished by the hospital for use in performing an operation.

In Butler v. Northwestern Hospital of Minneapolis, supra, it was said:

"There is intimation by defendant that the injury was caused by the negligent conduct of the nurse. Her negligence, if any, can be considered only in relation to the defective clamp. No other is material. It was upon that theory that the case was submitted to the jury, and so is to be determined here. The jury's verdict resolves that issue in favor of plaintiff, and we cannot, as matter of law, hold it otherwise. Mrs. Nordgren, although a trained professional, could reasonably rely upon the hospital's furnishing a proper clamp. We agree with defendant that if the article furnished was obviously unfit for the use for which it was furnished and intended, and the nurse used it in violation of the usual standards of due care of nursing practice, the defendant cannot be chargeable with any injurious effects therefrom. Payne v. Santa Barbara Cottage Hospital, 2 Cal.App.2d 270, 37 P.2d 1061. But the defect was not patent. The clamp was furnished apparently ready for use, and it was not her duty to examine into its mechanical parts for the discovery of possible defects. Ratliffe v. Wesley Hospital, 135 Kan. 306, 310, 10 P.2d 859. The defect was not discovered until she returned from her effort to get the missing proctoclysis equipment, and she then found it apart." (278 N.W. 39)

In view of what is said above, we hold that there is no merit in the arguments asserted by the Infirmary in support of its contention that the trial court erred in refusing the affirmative charges requested by it.

■ The Infirmary next contends that the trial court erred in refusing to give its written requested charge No. A–1, which reads:

"You cannot award any damages for injuries to the plaintiff which were proximately caused by negligence or unskillfulness imported into an operation by reason of the condition of hospital equipment used by a surgeon employed by the Plaintiff."

This charge is somewhat confusing. But for the purposes of this appeal we will treat it, as does counsel for the Infirmary, as being designed to instruct the jury that Mrs. Camp was not entitled to recover even if the dermatome furnished by the Infirmary was defective because it was the duty of the surgeon to examine and inspect the dermatome before using it. The Infirmary says that under our holding in Robinson v. Crotwell, supra, it was error to refuse the charge. We do not agree. In the Robinson case Crotwell sued Robinson, a doctor and the owner of the hospital where the operation was performed by another doctor. Crotwell claimed that Dr. Robinson contributed to the result of the operating surgeon's alleged negligence by furnishing an inadequately equipped place in which to perform the operation. In treating with the question of the hospital's liability, this court said:

" * * * This, however, leaves the question at issue to depend upon defendant's responsibility for the operating surgeon; for, if the condition of the hospital and its equipment was such as, in itself, to impart an element of negligence or unskillfulness into an operation performed there, the responsi-

bility for that element of the operation rested upon the surgeon, whose judgment determined upon and directed the operation. * * *" (175 Ala. 208, 57 So. 28)

In the Robinson case that which was furnished by the defendant was "an inadequately equipped place in which to perform the operation." This related to the overall inadequacy of the hospital and its equipment, which would be obvious to the surgeon, a patent defect, which would relieve the owner of the hospital from liability. But in this case the defect was latent and we do not think that the language of the Robinson case upon which the Infirmary relies is applicable to this case.

The Infirmary makes the same argument in support of its contention that the trial court erred in refusing its written requested charges A-13, A-8, M-W and M-Y as it made in support of its insistence that the trial court erred in refusing its charge No. A-1. What is said above in regard to charge A-1 is applicable to charges A-13, A-8, M-W and M-Y. We hold they were refused without error.

■ In its brief the Infirmary says that the trial court erred in orally charging the jury "that when the defendant undertook to furnish instruments for use by a surgeon there then arises the duty on the hospital to use reasonable care to see that such instruments are reasonably fit for the purposes and uses for which they are intended and furnished." We lay aside the question as to whether an exception was properly taken to the court's oral charge. In our opinion the statement quoted above is a correct statement of the law and was within the issues of this case.

■ It is contended by the Infirmary that the trial court erred in permitting Mrs. Camp to introduce in evidence photographs of herself which show the extent of her injury and in allowing her to appear before the jury dressed in shorts, whereby the jury could view the scars on her thigh. There was error neither in the admission of the photographs nor in the exhibition of the scars. Occidental Life Ins. Co. of California v. Nichols, 266 Ala. 521, 97 So.2d 879; Birmingham Electric Co. v. McQueen, 253 Ala. 395, 44 So.2d 598; Johnson v. Sexton, 276 Ala. 332, 161 So.2d 815.

■ The Infirmary says that the verdict was excessive and that the trial court erred in overruling the ground of its motion for new trial which took that point. We do not agree. This court has laid down the principle that a verdict will not be disturbed as excessive where the trial court has refused to disturb the amount unless so excessive as to indicate passion, prejudice, corruption or mistake. Montgomery City Lines, Inc. v. Davis, 261 Ala. 491, 74 So.2d 923. And we have held that the correctness of a jury's verdict is strengthened when the presiding judge refuses to grant a new trial. Simpson v. Birmingham Electric Co., 261 Ala. 599, 75 So.2d 111. See Brandwein v. Elliston, 268 Ala. 598, 109 So.2d 687; Smith v. Cullen, 270 Ala. 92, 116 So.2d 582.

The judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and GOODWYN, J., concur.

COLEMAN, J., concurs specially.

COLEMAN, Justice (concurring specially).

I concur in the result and in the opinion, except for the possible implication that defendant would be entitled to the affirmative charge if the defect in the dermatome had been a "patent" defect.

The opinion states that ". . . the defect was latent . . .." In such a case, it does not seem to me necessary to decide what would be the result in case of a patent defect. The opinion certainly

**8.**

does not recite that defendant would be entitled to the affirmative charge if the defect were patent; but, to avoid future misinterpretation, I wish to say that I do not concur in the possible implication that we might reverse if the defect were patent.