44 So.2d 598

### BIRMINGHAM ELECTRIC CO. v. McQUEEN.

#### 6 Div. 830.

Supreme Court of Alabama.

Jan. 19, 1950.

Rehearing Denied March 9, 1950.

Lange, Simpson, Robinson & Somerville, of Birmingham, for appellant.

Taylor, Higgins, Koenig & Windham, of Birmingham, for appellee.

398

SIMPSON, Justice.

The plaintiff, Eugene McQueen, eighteen years of age at the time of the accident, suing by next friend, recovered, a judgment for damages against the appellant for injuries received by him as a passenger in an automobile in collision with one of appellant's streetcars about 12:30 a. m. March 21, 1946.

The collision occurred near the intersection of First Avenue, North, and 82nd Street in the city of Birmingham, Alabama. The streetcar was being operated at the time upon what is known as the West End line and its route required the streetcar to proceed straight in a westerly direction along First Avenue across said intersection, whereas, instead of taking this route, which witnesses testified was the customary and proper route to be taken by the streetcar, by reason of the switch being open it turned onto 82nd Street into the path of the automobile, which was proceeding eastwardly on First Avenue, and struck its left rear portion, where the plaintiff was seated, resulting in wrecking the motor vehicle and seriously injuring the plaintiff.

There were two counts in the complaint, one for negligence and one charging wantonness on the part of the agent or servant of the defendant in the operation of the streetcar. The first insistence of error is rested on the refusal of the trial court to give the general affirmative charge for the defendant on the wanton count. We will not detail the entire evidence in the case, but make only such references thereto as will demonstrate our conclusion that the charge was properly refused.

■ At the outset we will restate for emphasis the well-recognized rule that the test in reviewing the propriety of the affirmative charge is not what our view may be of the weight of the evidence or even what inferences we may think more probable, but if from the proven facts and circumstances a reasonable inference may be drawn to substantiate the claimed culpability of the defendant, the charge must be refused. Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224; Duke v. Gaines, 224 Ala. 519, 140 So. 600.

Viewed in the light of this guiding principle and considering the evidence in its most favorable aspect for the plaintiff, the impartial mind cannot escape the conclusion that the jury might reasonably infer wanton conduct on the part of the motorman at the time of the accident.

■ Of course, it must be shown that from his knowledge of existing conditions that injury would likely result and, with reckless indifference to the consequences, he consciously and intentionally did the wrongful act or omitted to do some duty, proximately producing the result. Bradley v. Johnson, 212 Ala. 330, 112 So. 710.

■ But wantonness may arise from knowledge that persons, though not seen, are likely to be in position of danger and bringing on disaster with conscious disregard of known conditions and in violation of a duty to act. It may arise after discovery of actual peril by conscious failure to use preventive measures at hand. Godfrey v. Vinson, 215 Ala. 166, 110 So. 13.

■ We think the jury had a right to infer from the proven facts and circumstances that the motorman was guilty of wantonness within the rule of our cases in allowing the streetcar to be turned into the 82nd Street intersection and continue in the direction of the plaintiff's car, which, according to some of the testimony, he first observed about 100 feet away, when by the turning of a lever he could have brought the streetcar to an almost immediate stop. He testified he noticed the switch was open as he approached it and that he expected it to be open. With knowledge, however, of this apparent danger, and the conditions there existing, he did nothing to stop the streetcar, but instead he deserted his post of duty and ran toward the rear. According to the evidence of plaintiff, the automobile was proceeding eastwardly along its proper side of the Avenue at a rate of speed of between twenty and thirty miles an hour; the street car, according to some witnesses, was proceeding at about the same rate of speed, and had both vehicles maintained their proper course they could have passed in safety and the collision would not have occurred. But instead, the motorman, though anticipating the switch would be open and then seeing it so, failed to act to prevent the collision. Under one aspect of the motorman's testimony, the automobile was first observed by him about 100 feet west of the intersection, and the streetcar was traveling at a speed of approximately five miles an hour with the current off, and in an emergency, brakes could be applied with a single movement of the brake lever, which would have stopped the car in a few feet. This, as stated, he failed to do, but instead deserted the controls and ran toward the rear of the streetcar. We must conclude that under either phase of the evidence a fair inference of wantonness occurs and there was no justification for the giving of the affirmative charge for the defendant on the wanton count.

The trial court refused the following charge, which is the basis of one assignment of error: "20. The Court charges you that if you are reasonably satisfied from the evidence in this case that the driver of the automobile was in an intoxicated condition, and that by reason thereof it was dangerous for him to operate an automobile, and you are further reasonably satisfied from the evidence that the plaintiff, with knowledge of the driver's condition, negligently entered and rode in said automobile, and that such negligence on his part proximately contributed to cause his alleged injuries, then I charge you that the plaintiff would not be entitled to recover under Count One of the complaint."

■ There may be other grounds on which refusal of the charge may be justified, but one manifest is that it was abstract. Though there was evidence that the driver of the car had some time before the accident partaken of a half-bottle of beer, there was an entire absence of evidence that he was either in an intoxicated condition or that it was dangerous for him to drive the automobile or that appellee had any knowledge of these asserted conditions.

■ City police officer Massey, a witness for the defendant, testified on direct examination and was permitted to refer to his "wreck investigation card," which was his official report to the City Department, as an aid to refreshing his recollection regarding the scene of the accident. In the course of his examination in chief, after referring to this investigation card, he testified as to the observance of certain skid marks of the automobile at the scene of the accident and also that the driver of the car, Davidson, told him at the hospital, following the collision, that he, Davidson, "wasn't doing much over 40 miles an hour." On cross-examination, plaintiff's counsel was permitted to cross-examine the witness as to what the card showed with reference to the skid marks and that the card showed contrary to what his testimony was on the stand, and that in the space on the card for noting the speed of the automobile he had put a question mark and "didn't put any speed whatsoever." After this cross-examination, defendant sought to introduce the entire investigation report card and the court's action in refusing it is made the

basis of an assignment of error. We think the ·questions on cross-examination directed to the notations on the card as regards the skid marks and the speed of the automobile were by way of impeachment of the witness's direct testimony and that it was properly to be referred to for that purpose. The effect of the decisions on the question is that such part thereof may be used for the single special purpose of impeachment without making the whole of the document evidence, with the permission of the adverse party to use such other parts of the document as may serve to explain the contradictions. Grasselli Chem. Co. v. Davis, 166 Ala. 471, 52 So. 35; Birmingham Ry., Light & Power Co. v. Bush, 175 Ala. 49, 56 So. 731; Portsmouth Cotton Oil Refining Corp. v. Madrid Cotton Oil Co., 200 Ala. 634, 77 So. 8. Defendant, however, did not seek to introduce such other parts of the document for the purpose of explaining this impeaching evidence, but proffered the entire document, which was not within the rule of admissibility.

■ One assignment of error challenges the admissibility of a profile picture of the plaintiff, taken immediately after the bandages were removed, showing the various lacerations and wounds on his face and head. The photograph was proven to have correctly reflected the condition of the wounds at that time. The trial took place more than two years later, and we think the photograph gave a well-defined and vivid picturization of the extent and character of the facial injuries suffered by the plaintiff, and its inspection here fully convinces us that it served a proper purpose. Birmingham Baptist Hospital, Inc., v. Blackwell, 221 Ala. 225, 128 So. 389. Though such evidence may be regarded as only cumulative and to some extent unsightly, it shed light upon a material inquiry. In re McKee v. State, Ala.Sup., 44 So.2d 781;[1] Reedy v. State, 246 Ala. 363, 20 So.2d 528; Floyd v. State, 245 Ala. 646, 18 So.2d 392; Weems v. State, 222 Ala. 346, 347, 132 So. 711, 713; Wilson v. State, 31 Ala.App. 21, 11 So.2d 563, 566; Swin-

dle v. State, 27 Ala.App. 549, 176 So. 372, certiorari denied, 234 Ala. 621, 176 So. 375; Grissett v. State, 241 Ala. ·343, 2 So.2d 399.

The defendant sought to cross-question plaintiff's witness Ragsdale, one of the occupants of the car, as follows:

"Q. You were injured, were you? A. Yes, sir.

"Q. Have you—did you file any suit?
 * * * * * *

"Q. Do you have a suit against the Birmingham Electric Company?
 * * * * * *

"A. No, sir.

"Q. You made no claim against the Birmingham Electric Company?

"(Objection sustained and exception)

"Q. Do you have a claim pending against the Birmingham Electric Company?

"(Objection sustained and exception)

"Q. Did you assert any claim against the Birmingham Electric Company?

"(Objection sustained and exception)"

■ It was insisted on trial and the argument is renewed here that defendant was entitled to have answered the questions that he "asserted" or "made no claim against * * * Company?" and as to whether or not he has "a claim pending against the * * * Company?" as tending to show the interest of the witness. We cannot agree with the contention. That he made no claim against the Company would have no tendency to show interest or bias of the witness toward the plaintiff, but, if of probative force at all, would have tended to draw an unfavorable comparison against the plaintiff by showing that while the plaintiff was asserting a claim, the witness had not, which would not have been permissible. Such seems to have been the clear purpose of the questioning, but if its purpose was otherwise, and to show that the witness did have a pending claim against the company, then, since the interrogation does not disclose on its face the anticipated answer, as a predicate for review of the adverse ruling, the bur-

1. Ante, p. 235.

den was on the interrogator to make known to the court what the answer would be and to show that such proffered proof would be relevant. This, regardless of whatever scope or effect (if any see Flowers v. Graves, 220 Ala. 445, 125 So. 659) § 445, Title 7, Code 1940, might have. Strickling v. Whiteside, 242 Ala. 29(2), 4 So.2d 416, and cases cited.

■ Another ground of error is asserted with respect to certain argument of counsel for the plaintiff to the jury. Though the court sustained objections to the argument, with proper directions to the jury, the motion for a mistrial was overruled by the court, and this ruling is assigned as error. The argument was as follows: "I was surprised when I found out that he wasn't killed. I will tell you, gentlemen, you go out there and do your duty and render a verdict for the amount which we are asking for in that complaint and you will serve your county here and you will stop the headlines of the papers in Birmingham and other papers of people killed and run over by street cars in Birmingham."

It is pointed out that argument of a similar character was made by the same counsel in Alabama Great Southern R. Co. v. Swain, 248 Ala. 535, 28 So.2d 714, where the court indicated its impropriety. The insistence is made that as a punitive measure for the repetition by the same counsel of such argument, he be deprived of "the fruits of his victory won by his misconduct." It is to be observed in the Swain case that, with respect to such argument, the conclusion was reached that whatever harmful effects, if any, might have attended it were eradicated by the prompt and emphatic instructions of the court to the jury. On the record before us and on the authority of that case, the same conclusion must prevail here. As to this, the record shows the following:

"Gentlemen, I will sustain the objection. There is no evidence in this case about any headlines, and it is an improper argument and not to be considered by you. You are not concerned with any other circumstances at all except the circumstances

in this case and it would be highly improper for you to consider that argument or draw any inference from that argument. I will exclude that statement from your consideration.

"Mr. Perdue: We except.

"Mr. Clark: If the court please, we take the position that that statement made in connection with the headlines in the papers is so highly improper that we move for a mistrial on account of it.

"The Court: Gentlemen, I have excluded that argument from your consideration. As I said, it would be highly improper for you to consider it. You are intelligent men and it is your duty to follow the court's instructions, and I know you will do that. I will overrule your motion for a mistrial."

The following observations with reference to the argument in the Swain case by Mr. Chief Justice Gardner are pertinent:

"* * * the true position of an attorney before the court is that of an aide and assistant. He is an officer of the court, amenable to its authority and subject to its correction. And, by way of admonition to counsel in regard to illegal argument, we have also warned that there is an effective way of repressing the wrong by way of setting aside a judgment obtained by highly prejudicial and improper argument.

"But, in the exercise of our authority on appeal, we should be fully convinced that the argument is wholly improper and of a highly prejudicial character to such an extent as prompt and repressive measures by the trial judge will not eradicate any harmful effect such argument may be said to produce. This for the reason that the rights of parties are involved which must be duly respected, notwithstanding we may disapprove the method pursued in argument. * * *" 248 Ala. at pages 538-539, 28 So.2d at page 716.

Counsel, in persisting in this method of argument, really does place himself in an unenviable position, and as an officer of the court should refrain therefrom and pursue a line of argument which is based on the evidence. Nevertheless, from a careful reading of this record we are not

persuaded that the argument was so improper and highly prejudicial as that the prompt action of the court aforesaid did not fully eradicate whatever evil effect, if any, it might have had on the jury. So considered, we must hold that no error attended the overruling of the motion for a mistrial.

What we have said with reference to the last proposition of error is equally applicable to the allegations made in the motion for a new trial of the cumulative effect of improper statements of plaintiff's counsel producing an atmosphere of bias and prejudice. We find no such bias or prejudice and this ground of the motion for a new trial was likewise untenable.

It finally remains to consider the assignments alleging excessiveness of the verdict. Matters of this nature are always difficult of solution for an appellate court. We are reluctant to substitute our judgment for that of the jury and the trial judge, who not only heard and saw the witnesses testify, but could observe the visible effects of the disfigurement of the plaintiff's face; and as regards the permanence of his injury and the amount of future pain and suffering which might result from the brain concussion which he suffered, no one can foretell, nor is there any yardstick to measure the amount of such recompense. Birmingham Electric Co. v. Thompson, 251 Ala. 465, 37 So.2d 633.

The proven injuries, briefly stated, were concussion of the brain, with resulting unconsciousness for fifteen hours; multiple cuts about face, forehead and around left eye, necessitating some ninety-odd stitches to suture and close cuts; three broken ribs; cuts about the ear, back and arm and both hands; various body bruises; hospitalization for approximately six days; constant severe headaches for a period of several weeks; at the time of the trial, more than two years thereafter, severe headaches on occasion, back pains still suffered at times, quivering of left eye when it closes, no feeling in and numbness of face and forehead around left eye in the scarred area, slivers of glass still working out of wounds, permanent disfigurement of face, forehead, and eye from resulting scars.

Considering the state of the record and the favorable presumption attending the correctness of the verdict and the trial judge's opinion thereon in denying the motion for a new trial, we must hold this assignment of error likewise untenable.

The conclusion has been reached, after careful consideration of the record, in connection with the able argument of adversary counsel, that an affirmance of judgment must be ordered.

Affirmed.

BROWN, LIVINGSTON and STAKELY, JJ., concur.