MADDOX, Justice.
This is a subrogation case, based on a fire loss, in which, at the close of the plaintiff/appellants’ evidence, the defendant moved for a directed verdict on each of five counts of the complaint, and the trial court granted the motion as to all counts. We reverse and remand.
The case arose as a result of a house fire[1] on January 5, 1981. The evidence tended to show that the fire apparently started around a chimney or flue which ran from a wood-burning heater in the basement up through the middle of the house. This heater was installed as a supplement to the central heating unit.
The Costellos testified they had personally built most of the house. Mrs. Costello’s brother is a building contractor and helped with much of the construction on the house. Certain parts of the house, such as plumbing, wiring and the central heating and air conditioning, were “contracted out” to professionals in these areas.
The Costellos claimed that they had made an oral contract with Richards Electric Co., Inc., to install a central heating and air conditioning system, and that this contract included the purchase and installation of a metal flue for a wood-burning heater. Richards Electric denied its agents had agreed to install the flue or that its agents had installed the flue to the wood-burning heater. Richards Electric did admit that it had agreed to install the central heating and air conditioning and an auxiliary venting system from the wood heater to the central system. The complaint contained counts of breach of contract, breach of warranty, products liability, negligence and misrepresentation.[2]
The plaintiff presented evidence through an expert, the local volunteer fire chief, which tended to show that the fire had *176 started because either the flue was choked by the damper being closed too tightly, or the flue was overburdened with creosote from inadequately burned fuel, which caught fire, or that the flue was too close to the wood framing of the house, or a combination of the three. The plaintiffs presented no other evidence as to whether the flue was improperly installed, nor as to whether the flue material was the standard material used in the industry.
Richards Electric claims that a directed verdict was proper in the case, because the plaintiffs failed to prove that it had contracted to install the chimney flue. On the other hand, the plaintiffs contend that they presented at least a scintilla of evidence that Richard Electric had agreed to install the flue and had, in fact, installed it.
The plaintiffs presented evidence that Mrs. Costello had negotiated with Richards Electric to have a central heating and air conditioning system installed, and, regarding the flue, Mrs. Costello testified that she “wanted” Richards Electric to install a flue for the wood-burning heater. She testified that she went to Richards Electric on at least two occasions. On the first occasion, she testified, she
“... stopped on one afternoon and talked to Richards Electric about installing a central heating and air conditioning system. And, talked to them — told them that I wanted to put in a wood heater. They told me to come back with my house plans; they would have to have those.”
On the second visit to Richards Electric, Mrs. Costello testified that she “asked him [Dennis Richards] about putting in a flue, is when I did that.” Regarding this second visit to Richards Electric, Mrs. Costello was asked on direct examination:
“Q. Did you describe to him what you wanted him to do with regard to the wood heater or did he describe it to you?
“A. No, I left that up to him.
U * * *
“Q. What did anybody else say on that occasion — the second occasion that you were in there?
“A. The second occasion there was not much said. I dropped my house plans off and stated that we were going to install — wanted to install a wood heater and that we wanted to carry the air upstairs through a vent and, he said, they could do that.
“Q. Okay. Did you have any other conversations at any other time with anybody from Richards Electric Company?
“A. I stopped by a third time to pick up my house plans.
“Q. When was that? Do you know?
“A. He called — told me he had finished with them. To give me an estimate on the cost of the heat pump and Carrier air conditioning system. I did not get a cost of the venting for the hood that sat over the wood heater, nor a cost of any other sheet metal work that was to be done in the house at that time.”
Mr. Costello testified on direct examination that he had had a conversation with a “blonde gentleman” at the building site, as follows:
“THE WITNESS: I asked him what he was going to do to install this flue and where and exactly for him to explain to me how it was going to be put in.
“Q What did he say to you?
“A He explained to me that the vents — the return — the vent that was to go over the top of the heater was to be hooked into the return vent and he explained to me about making a vent return exactly the same size as the heater and going to the heating and air conditioning unit. And, he, also, explained to me that he would install the flue that carried the smoke out of the house through this air directly above the wood-burning heater.
“Q Was that the end of your conversation?
“A Yes, sir.
“Q What did you do then?
“A I went to work that day.
“Q When did you return home?
“A In the evening around 5:00 or 5:30, probably.
*177 “Q What, if anything, did you observe when you returned?
“A At this time all of this work that I discussed with him was installed including the flue that goes up through the center of the house and the return vent that went to the heating and air conditioning unit.”
On cross examination, Mr. Costello testified further regarding the alleged oral contract with Richards Electric to install a flue for the wood-burning heater:
“Q Did you ever go to Richards Electric Company and ask them to do any electrical work at your house?
“A No, ma’am.
“Q Did you ever go to Richards Electric Company and ask them to install a heat pump — a Carrier heat pump at your house?
“A No, ma’am, I did not.
“Q It was your wife that did that, wasn’t it?
“A Yes, ma’am.
“Q Did you ever go to Richards Electric Company and ask them to install a hood over a wood-burning stove?
“A No, ma’am.
“Q It was your wife that did that, wasn’t it?
“A Yes, ma’am.
“Q Did you ever — Excuse me.
“So, you never heard any negotiations between Richards Electric Company and your wife concerning the installation of the heater? You were never present when they were discussing any of this business?
“A No, ma’am.
“Q Were you at the house when the wood heater was installed?
“A I don’t know.
“Q Were you at your home at the house that you were constructing — were you there when the wood-burning heater was installed?
“A No.
“Q Were you there when the chimney flue was installed?
“A No.
“Q So, you never saw anybody install the wood-burning heater or the chimney flue?
"A No.”
Richards Electric offered an affidavit by Dennis Richards, president of Richards Electric and owner of 50% of the stock, with its pleadings, which, in pertinent part, reads:
“On or about October, 1979, Richards Electric Company was contacted through me by Mrs. Elaine Costello for the purpose of installing a central heat pump system in her home....
“Mrs. Costello made several trips to our office and telephone calls to our office consulting me about this work. In addition to the installation of the central heat system, Mrs. Costello later requested that Richards Electric Company install a vent over a wood-burning heater located in the basement of the house. That vent was to be connected to the duct work of the central heat system. The purpose of this was to capture heat rising from the wood-burning heater and circulate it through the house. At no time in our discussions of this matter did Mrs. Costello request that Richards Electric Company install the wood-burning heater. Richards Electric never billed the Costellos for the installation of a wood-burning heater; Richards Electric Company never furnished any materials to the Costellos for the purpose of installing a wood-burning heater and Richards Electric Company never received any compensation from the Costellos for the installation of a wood-burning heater. It is the best of my knowledge and belief that Richards Electric Company never installed a wood-burning heater at the home of Danny and Elaine Costello.”
The plaintiffs argue that “the trial judge committed reversible error by finding that the plaintiff did not produce even a scintilla of evidence to support any of the allegations, thus preventing the case from being determined by a jury.” They cite Rose v. Miller & Co., Inc., 432 So.2d 1237 (Ala. 1983); Great Southwest Insurance Com *178 pany v. Stone, 402 So.2d 899 (Ala.1982); Herston v. Whitesell, 374 So.2d 267 (Ala.1979); Birmingham Electric Co. v. McQueen, 253 Ala. 395, 44 So.2d 598 (1960); Ala.R.Civ.P. 50.
Richards Electric argues there was not a scintilla of evidence presented by the plaintiff on any of the counts in the complaint. It contends that the evidence presented by the plaintiffs showed only that “the plaintiff [sic] had a fire in their home from which they suffered damages,” and “that this fire originated around the chimney of a wood heater, and in the opinion of the fire chief could have been caused by anyone [sic] or a combination of several factors.” Admittedly, the evidence is weak on showing that a contract existed, but we are of the opinion that the plaintiffs offered at least a “gleam, glimmer or spark” of evidence necessary to have their case go to the jury.
The standard of review this court must use is as follows:
“[T]he test in reviewing the propriety of the affirmative charge is not what our view may be of the weight of the evidence or even what inferences we may think more probable, but if from the proven facts and circumstances a reasonable inference may be drawn to substantiate the claimed culpability of the defendant, the charge must be refused.”
Birmingham Electric Co. v. McQueen, 253 Ala. 395, 398, 44 So.2d 598, 601 (1950).
The basic issue thus becomes whether the plaintiff offered any evidence which tended to lead to a reasonable inference that the defendant orally contracted with the plaintiffs to install the flue and that the defendant did, in fact, install the flue. For if no reasonable inference could be drawn from the evidence to show the defendant had orally contracted to install the flue and had installed the flue, none of the theories of the complaint could stand. As we have already stated, we think the plaintiffs offered at least a scintilla of evidence on this issue; therefore, the judgment of the court is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur.

. Danny and Elaine Costello are the owners of the house and had a fire insurance policy with Allstate Insurance Company, which paid all but $100 of the $13,059.78 claim.

. Originally, suit was brought against the manufacturer and the seller of the wood heater. These defendants were dismissed following pro tanto settlements.